BEST DISPOSAL SYSTEMS, a division of Waste Management of Wisconsin, Inc., a Wisconsin corporation, Plaintiff-Respondent,

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT, a municipal corporation, Defendant-Appellant,

GO OF WISCONSIN, INC., a Wisconsin corporation, and Land Reclamation, Ltd., a Wisconsin corporation, Defendants and Co-Appellants,

TOWN & COUNTRY WASTE SERVICE, INC., a Wisconsin corporation and Town of Mount Pleasant, a municipal corporation, Defendants.

Court of Appeals

*No. 85-0674. Submitted on briefs November 7, 1985.—*
*Decided January 27, 1986.*
(Also reported in — NW2d —.)

For the plaintiff-respondent the cause was submitted on the briefs of *Friebert, Finerty & St. John, S.C.* by *John D. Finerty* and *William S. Roush, Jr.,* of Milwaukee.

For the defendant-appellant the cause was submitted on the briefs of *Michael J. McCabe,* director legal services, with *Patrick Halligan,* senior staff attorney of counsel, of Milwaukee.

For the defendants-co-appellants the cause was submitted on the briefs of *Law Offices, Joseph J. Muratore, S.C.* by *Joseph J. Muratore, Sr.* and *Joseph J. Muratore, Jr.,* of Racine.

Before Moser, P.J., Sullivan and Brown, JJ.

MOSER, P.J. The Milwaukee Metropolitan Sewerage District (the District) and GO of Wisconsin, Inc. (GO) appeal an interlocutory order granting Best Disposal Systems (Best) a temporary injunction. Because the trial court abused its discretion in granting the injunction, and because the court failed to rule on an issue, we reverse.

In late 1984 the District requested bids for the disposal of trash which the District screens out of wastewater before treating it. The bid request specified that all bids had to name an approved landfill site. GO, the low bidder, initially forgot to name a landfill site, but filed the information shortly after. The District awarded the contract to GO.

GO's chosen landfill site, Land Reclamation, Ltd. (Land Reclamation), was located in the Town of Mount Pleasant. A January, 1970, Town of Mount Pleasant ordinance provided that the landfill could only receive waste from Racine county and parts of Kenosha county.

Best, the high bidder on the contract, challenged the award of the contract and asked the trial court for a temporary injunction against the District enjoining it from awarding the contract to GO. The court ordered a temporary injunction. We granted the District and GO leave to appeal.

GO and the District initially argue that the trial court abused its discretion in issuing the temporary injunction. The granting or denial of a temporary injunction is within the trial court's sound discretion and will not be reversed on appeal absent a showing of an abuse

of discretion.[1] The test is not whether the appellate court would grant the injunction but whether there was an abuse of discretion on the trial court's part.[2] An abuse of discretion in granting or refusing to grant a temporary injunction may occur if the trial court: (1) failed to make a record of factors relevant to the discretionary determination in a particular case; (2) considered clearly irrelevant or improper factors; or (3) clearly gave too much weight to one factor.[3] An abuse of discretion may also be found where the trial court made an error of law.[4] The trial court is to consider the following guidelines in making its determination:

> "Injunctions, whether temporary or permanent, are not to be issued lightly. The cause must be substantial. *A temporary injunction is not to be issued unless the movant has shown a reasonable probability of ultimate success on the merits.* Temporary injunctions are to be issued only when necessary to preserve the status quo. Injunctions are not to be issued without a showing of a lack of adequate remedy at law and irreparable harm, but at the temporary injunction stage the requirement of irreparable injury is met by showing that, without it to preserve the status quo *pendente lite,* the permanent injunc-

---

[1] *Wisconsin Ass'n of Food Dealers v. City of Madison,* 97 Wis. 2d 426, 429, 293 N.W.2d 540, 542 (1980) (footnote omitted); *Mercury Records Prod., Inc. v. Economic Consultants, Inc.,* 91 Wis. 2d 482, 500, 283 N.W.2d 613, 622 (Ct.App. 1979) (footnote omitted).

[2] *Wisconsin Ass'n of Food Dealers, supra* note 1, at 429, 293 N.W.2d at 542 (footnote omitted).

[3] *Id.* at 430, 293 N.W.2d at 542 (citation omitted).

[4] *Negus v. Madison Gas & Elec. Co.,* 112 Wis. 2d 52, 62, 331 N.W.2d 658, 664 (Ct.App. 1983) (citation omitted).

tion sought would be rendered futile." (Footnotes omitted.)[5]

We hold that the trial court abused its discretion in granting Best a temporary injunction. We therefore reverse.

Best sought its preliminary injunction on two grounds: first, that the District violated statutory bidding requirements by allowing GO to name a landfill operator after the bids had been opened; and second, that Land Reclamation was not an approved landfill operator because the Town of Mount Pleasant ordinance prevented it from receiving Milwaukee waste.

In its oral decision, the trial court failed to make fact findings or rule on the issue of whether the District violated state law by allegedly disregarding its bid proposal agreement. Where a trial court fails to make a finding of fact, we may reverse and remand for the making of findings and conclusions.[6] We do so here, because this issue was integral to the trial court's estimation of Best's success on the merits.

At the injunction hearing, Best argued that under sec. 144.445(5), Stats., local preexisting ordinances regulating waste disposal preempted state statutes. The trial court agreed with Best and issued the injunction even though it stated that it did not understand the statute or the legislative intent behind the statute. We hold that because the trial court erroneously inter-

---

[5] *Wisconsin Ass'n of Food Dealers, supra* note 1, at 429, 293 N.W.2d at 542 (emphasis added, citation omitted).

[6] *See State v. Williams,* 104 Wis. 2d 15, 22, 310 N.W.2d 601, 605 (1981) (citation omitted).

preted sec. 144.445(5), it abused its discretion in issuing the injunction.

Section 144.445, Stats., governs conflicts between local ordinances and state law concerning solid waste disposal facilities. Section 144.445(5) deals with the applicability of local approvals.[7] That section provides:

(5) Applicability of Local Approvals. (a) The establishment of facilities is a matter of statewide concern.

(b) *An existing facility is not subject to any local approval except* those local approvals made applicable to the facility *under pars. (c) to (g).*

(c) Except as provided under par. (d), a new or expanded facility is subject to preexisting local approvals.

(d) A new or expanded facility is not subject to any preexisting local approvals which are specified as inapplicable in a negotiation agreement ap-

---

[7] According to sec. 144.445(3)(d), Stats., a "local approval"

includes any requirement for a permit, license, authorization, approval, variance or exception or any restriction, condition of approval or other restriction, regulation, requirement or prohibition imposed by a charter ordinance, general ordinance, zoning ordinance, resolution or regulation by a town, city, village, county or special purpose district, including without limitation because of enumeration any ordinance, resolution or regulation adopted under s. 59.065, 59.07, 59.083, 59.97, 59.971, 59.974, 60.10, 60.22, 60.23, 60.54, 60.77, 61.34, 61.35, 61.351, 61.354, 62.11, 62.23, 62.231, 62.234, 66.01, 66.052, 66.24(8), 87.30, 91.73, 144.07, 196.58, 236.45 or 349.16 or subch. VIII of ch. 60.

Because the Town of Mount Pleasant ordinance predated Land Reclamation's landfill site, it falls under sec. 144.445(3)(fm), which states that: " 'Preexisting local approval' means a local approval in effect at least 15 months prior to the submission to the department of either a feasibility report under s. 144.44(2) or an initial site report, whichever occurs first."

proved under sub. (9) or an arbitration award issued under sub. (10).

(e) Except as provided under par. (f), a new or expanded facility is not subject to any local approvals which are not preexisting local approvals.

(f) A new or expanded facility is subject to local approvals which are not preexisting local approvals if they are specified as applicable in a negotiation agreement approved under sub. (9).

(g) This subsection applies to a new or expanded facility owned or operated by a county in the same manner it applies to all other new or expanded facilities. [Emphasis added].

Interpretation of a statute is a question of law.[8] We need not defer to the trial court's determination of questions of law.[9] In construing a statute, we look first to its language. If the statutory language is clear, we do not consider any outside sources in determining legislative intent.[10]

Section 144.445(5)(b), Stats., states on its face that "[a]n existing facility is not subject to any local approval except those local approvals made applicable to the facility under pars. (c) to (g)." This subsection clearly governs cases where the local approval is preexisting as well. None of subsecs. (c) through (g) apply to this case because Land Reclamation is not a "new or expanded facility." Section 144.445(12)(c) states that "an existing solid waste disposal facility . . . shall be

---

[8] *Town of Seymour v. City of Eau Claire,* 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823 (Ct.App. 1983).

[9] *Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

[10] *Id.*

treated as a new expanded facility upon the adoption of a siting resolution by any affected municipality under sub. (6)." There is no evidence in the record that the Town of Mount Pleasant has adopted a siting resolution.

■

The trial court incorrectly determined that the Town of Mount Pleasant ordinance preempted sec. 144.445, Stats. In determining whether a preemption challenge to an ordinance has a reasonable probability of success, a trial court should assess whether express statutory language has withdrawn, revoked, or restricted the local government's power; the probability that the challenged ordinance is logically inconsistent with state legislation; and the probability that the challenged ordinance infringes the spirit of a state law or general policy of the state.[11] Here the trial court failed to determine whether the Town of Mount Pleasant ordinance infringed on the spirit of sec. 144.445. The legislature has deemed the establishment of solid waste disposal facilities to be a matter of statewide concern.[12] Although not conclusive, legislative determinations that matters are of statewide concern are entitled to great weight.[13] In a dispute between matters of local and statewide concern, the statewide concern will be paramount.[14]

---

[11] *Wisconsin Ass'n of Food Dealers, supra* note 1, at 433, 293 N.W.2d at 544.

[12] *See* sec. 144.445(5), Stats.

[13] *Wisconsin Ass'n of Food Dealers, supra* note 1, at 431, 293 N.W.2d at 543 (footnote omitted).

[14] *Id.*

Because the trial court failed to decide an issue of law integral to the injunction, and because it abused its discretion in issuing the injunction based on an erroneous interpretation of the law, we reverse the order granting the injunction and remand the case to the trial court for a *de novo* consideration of whether an injunction should issue.[15]

*By the Court.*—Order reversed.

BROWN, J. *(dissenting)*. I disagree with the majority's analysis, especially their interpretation of sec. 144.445(5), Stats. Because I believe that the trial court did not abuse its discretion in granting a temporary injunction, I dissent.

Although the facts have, for the most part, been adequately stated in the majority opinion, I feel compelled to explain the context in which the sec. 144.445(5), Stats., issue arose. The Milwaukee Metropolitan Sewerage District (MMSD) let bids for disposal of trash. All bidders were supposed to provide proof that local landfill regulations would not conflict with the operation of the contract. GO Inc., one of the bidders, entered the low bid but failed to provide the proper proof. GO premised its proposal on the assumption that sec. 144.445(5) supersedes and repeals any local regulation such that proof of unconflicting local regulations is immaterial. MMSD, accepting the theory that the violation was of little moment, accepted GO's bid. The trial court disagreed, holding that sec. 144.445(5) does not supersede and repeal local regula-

---

[15] *See id.* at 435, 293 N.W.2d at 545 (when it is evident that the trial court's analysis is incomplete and that the trial court abused its discretion, court of appeals should reverse and remand for *de novo* hearing).

tions. The trial court then held that the failure to provide proof of unconflicting local regulations was a material term and found it probable that the bidding procedures were violated. It then ordered a temporary injunction.

The majority now rules that sec. 144.445(5), Stats., unambiguously supersedes *all* preexisting zoning authority respecting existing landfills. The majority simply underscores that part of sec. 144.445(5)(b) which states that: "An existing facility is not subject to any local approval. . . ." The majority concludes that because the Town of Mount Pleasant ordinance is a form of local approval and the statute unambiguously renders local approval obsolete, reversal is mandated. I disagree.

My analysis begins with a maxim every bit as strong as the "clear and unambiguous" rule cited by the majority. The maxim I use holds that a statutory subsection may not be considered in a vacuum but must be considered in reference to statutes addressing the same subject matter. *Standard Theatres, Inc. v. Department of Transportation,* 118 Wis. 2d 730, 744, 349 N.W.2d 661, 669 (1984) (citation omitted). If the majority had analyzed sec. 144.445, Stats., as a whole, rather than limiting its analysis to subsec. (5)(b), then I believe a different result would have been obtained. The broader analysis shows that instead of manifesting an intent to preempt local zoning ordinances and regulations, the legislature intended local controls to remain very much a part of Wisconsin landfill law. Section 144.445(1)(e) and (f) makes this clear. Subsections (1)(e) and (f) read as follows:

> (e) The legislature further finds that whenever a site is proposed . . . the nearby residents and the

affected municipalities may have a variety of legitimate concerns . . . and that these facilities must be established with consideration for the concerns of nearby residents and the affected municipalities.

(f) The legislature further finds that local authorities have the responsibility for promoting public health, safety, convenience and general welfare, encouraging planned and orderly land use development . . . and that the reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities and hazardous waste facilities.

Likewise, the expression of legislative intent in sec. 144.445(2)(b) also shows no intention to preempt or nullify local regulations respecting solid waste disposal facilities.

Because the above sections conflict with the language contained in sec. 144.445(5)(b), Stats., ambiguity thus exists and clarification is necessary by further construction of the statute. A statutory term is ambiguous if reasonable persons could disagree as to its meaning. *Standard Theatres,* 118 Wis. 2d at 740, 349 N.W.2d at 667 (citation omitted). Such is the case here.

In a timely and well-considered article, Messrs. Peter J. Ruud and Dean M. Werner discuss sec. 144.445, Stats. Ruud and Werner, *Wisconsin's Landfill Negotiation/Arbitration Statute,* Wis. Bar. Bull., Nov. 1985, at 17. They point out that this section is a relatively new law having been promulgated in 1981; they synopsize both the history of the statute and the intent of the legislature in formulating this statute. The authors observe that one of the most difficult policy considerations in the area of solid waste disposal is political—the extent to which local citizens and units

of government should have a say as to whether or not, and how, a proposed facility should be built and operated. *Id.* Prior to the new law, this issue had been resolved in *Nelson v. Department of Natural Resources,* 88 Wis. 2d 1, 276 N.W.2d 302 (Ct. App. 1979), *summarily aff'd* 96 Wis. 2d 730, 292 N.W.2d 655 (1980). In that case, both the court of appeals and the supreme court held that the Department of Natural Resources did not have preemptive authority under then existing law to authorize construction of a landfill at a location where local zoning ordinance prohibited landfill use.

The *Nelson* decision spurred concern that there would be a statewide proliferation of local "anti-landfill" ordinances which might effectively make it impossible to locate new facilities anywhere in the state, regardless of need or technical feasibility. Ruud and Werner at 17.

In a clear attempt to prevent the anticipated consequences of the *Nelson* decision and to strike a balance between a need for new and expanded waste disposal facilities and the valid concerns of local interests in the siting of those facilities, the legislature in 1981 amended ch. 144, Stats. *Id.; see* ch. 374, Laws of 1981.

The new process provides for the resolution of the concerns of local interests through negotiation between the locality and the person desiring to establish the facility. If necessary, there is an arbitration process available. Ruud and Werner at 17. The express legislative intent is that the negotiation/arbitration process *could* lead to the preemption of local zoning or other regulations but not without first taking into account and making some accommodation for the legitimate concerns of local residents and municipalities. *Id. See also* sec. 144.445(2), Stats.

With the history and legislative intent in place, I see an anomaly occurring if the majority's interpretation is to be accepted. On the one hand, new and expanded facilities have state-of-the-art technology. Yet, before constructing a new or expanded solid waste disposal or hazardous waste facility, applicants are subject to preexisting local zoning ordinances and regulations unless these regulations are negotiated or arbitrated away. On the other hand, if we accept the majority's interpretation, all existing landfills (as opposed to new and expanded landfills) are not subject to any local regulation whatsoever. Thus, while new and expanded facilities with state-of-the-art design are subject to preexisting ordinances unless negotiated away, older less-engineered and constructed facilities are totally released from local controls. In my view, this is absurd. We must avoid unreasonable or absurd construction contrary to legislative intent. *DILHR v. Coatings, Inc.,* No. 84–1493, slip op. at 10 (Wis. Nov. 26, 1985).

I believe that sec. 144.445(5)(b), Stats., can be construed in a manner consistent with legislative intent and the history of the statute so that this absurdity will not endure. The basis for consistency can be found in the manner in which the legislature defined its terms.

When the legislature promulgated the statute, it defined the term "local approval" as follows:

> "Local approval" includes any requirement for a permit, license, authorization, approval, variance or exception or any restriction, condition of approval or other restriction, regulation, requirement or prohibition imposed by a charter ordinance, general ordinance, zoning ordinance, resolution or regulation by a town, city, village, county or special

purpose district, including without limitation because of enumeration any ordinance, resolution or regulation. . . .

Section 144.445(3)(d), Stats. The legislature made a policy decision that local approvals, "anti-landfill" in nature, are disfavored. *See generally* sec. 144.445.

Yet, the legislature also determined that some local approvals are acceptable. These the legislature termed "preexisting local approvals," defined as follows:

> "Preexisting local approval" means a local approval in effect at least 15 months prior to the submission to the department of either a feasibility report under s. 144.44(2) or an initial site report, whichever occurs first.

Section 144.445(3)(fm), Stats. Thus, the legislature separated "good" local approvals from "bad." The "good" local approvals remain in place unless they are negotiated or arbitrated away upon application for a new or expanded facility. *See* sec. 144.445(5). The "bad"—those last minute (within fifteen months) anti-landfill ordinances—are ordinarily nullified.[1]

Thus, as I read sec. 144.445(5)(b), Stats., "local approvals" must be construed to mean all non-preexisting local approvals. Where the legislature uses similar but distinct terms in juxtaposition, it is presumed that the legislature understood the difference in the terms. *See In re Athans,* 107 Wis. 2d 331, 335, 320 N.W.2d 30, 32

---

[1] I say "ordinarily" because even local approvals enacted "at the last minute" can be considered valid as long as the applicant for a new or expanded facility agrees to it as part of a negotiated agreement. *See* sec. 144.445(5)(f), Stats.

(Ct. App. 1982). By defining the term thus, the legislative intent is fulfilled.

It can be concluded that the legislature intended to continue the status quo with respect to existing facilities that were and are being operated under preexisting local regulations and permits. This construction makes sense. Existing facilities were already required to be established and operated in a manner consistent with local regulations existing at that time. However, the legislature has now acted to prevent municipalities from implementing new "local approvals," to impose additional, arbitrary or unreasonable regulation upon existing facilities that might be so onerous as to make the continuation of existing facilities impossible or impractical. Thus, although sec. 144.445(5)(b), Stats., speaks to "local approval," it is completely silent as to "preexisting local approvals."

I conclude that because sec. 144.445(5), Stats., does not preempt existing facilities from preexisting local regulations, the majority's interpretation is incorrect. Their interpretation, therefore, should not be used as a basis for MMSD and GO to avoid their obligations under the prescribed bidding procedures. I consider the violation to be material and important. Thus, I think there is a substantial probability that Best would succeed on the merits of the case; since Best was the only bidder that produced an error-free bid, it would be irreparably harmed if a temporary injunction were not granted.

The trial court found that the plaintiffs would probably succeed on the merits and that they had produced evidence intending to establish the allegations of the complaint which, if unrebutted, would result in a verdict in their favor. The trial court also found that

the plaintiffs would be irreparably injured and that it was appropriate to preserve the status quo in order to prevent a final judgment from being rendered ineffectual. Because I agree with the trial court, I would find that it did not abuse its discretion in ordering a temporary injunction.