SCHOOL DISTRICT OF SLINGER, Plaintiff-Respondent,

v.

WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION,
Defendant-Appellant.

Court of Appeals

*No. 96–3135. Oral argument March 6, 1997.—Decided April
23, 1997.*

(Also reported in 563 N.W.2d 585.)

For the defendant-appellant the cause was submitted on the briefs and oral argument of *Gerald M. O'Brien* of *Anderson, Shannon, O'Brien, Rice & Bertz*, of Stevens Point.

For the plaintiff-respondent the cause was submitted on the brief and oral argument of *James W. Mohr, Jr.* of *Mohr & Anderson, S.C.* of Hartford.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. This case comes before us on the Wisconsin Interscholastic Athletic Association's (WIAA) petition for leave to appeal an order for a temporary injunction that restrained and enjoined the WIAA from placing the School District of Slinger (Slinger) "in [WIAA's] proposed Conference A, or in any other conference which is not reasonably close to [Slinger], which does not have schools comparable in size to [Slinger] and which does not have similar programs . . . ." We granted the WIAA's petition and stayed the circuit court's order pending appeal. The circuit court concluded that Slinger had shown a reasonable probability of ultimate success on the merits, and its order provided the relief that Slinger ultimately sought—removal from Conference A—instead of maintaining the status quo as the law requires. We conclude that the order for a temporary injunction constitutes a misuse of the circuit court's discretion and that Slinger has failed to allege that a contractual right to a "reasonable" conference affiliation existed. Therefore, we reverse.

The WIAA is a voluntary, unincorporated and non-profit organization consisting of all 425 public high schools in the state of Wisconsin which have an interscholastic athletic program. The governing body of the

WIAA is the Board of Control (the Board). Slinger is a member of the WIAA and has executed a 1996–97 association membership renewal dated June 14, 1996. All membership schools agree to "adopt[ ] the rules of the association and [to] conduct its athletic program in accordance with the constitution [and] bylaws . . . as well as the interpretations and decisions of the WIAA." The constitution, in effect, constitutes an agreement with the WIAA and all member schools.

Pursuant to the constitution, all member schools are divided into conferences. Under Article VI, Section 10, the Board has the authority to "bring about a reasonable conference affiliation and relationship for member schools." The note to this section states: "It is not the intent to make wholesale changes in existing conference lines. It should be understood, however, that there could be shake-ups in areas where conference affiliation problems are particularly acute, and it may not be realistic to find a solution for every member school." The Board has also adopted procedures to be followed in realignment matters, including several criteria to be considered during realignment proposals. Alignment changes are made for four-year periods with automatic review after two years so that as changes become necessary, they can take effect immediately after the four years.

In the 1993–94 school year, a realignment of the conferences in the southeastern portion of the state was implemented and review of the alignment began in 1995. Members were notified and hearings and meetings were held between May 5, 1995, and April 16, 1996. Douglas Chickering, executive director of the WIAA, submitted his proposal dated May 3, 1996, to be considered by the Board on May 17, 1996. Even though most of the schools objected to their new conference

placement, the Board preliminarily adopted a revised version of the May 3 recommendation creating nine seven-team conferences involving both public and non-public schools. Appeals were heard at a July 19, 1996 board meeting. Subsequently, the May 17 plan was rejected by the Board.

On August 2, 1996, the Board reconsidered the southeastern conference alignment. Chickering's July 29 proposal[1] was amended with the movement of Wauwatosa West from Conference G to Conference D and the amended plan was then unanimously passed. After rejecting appeals from eight districts representing nine of the sixty-three schools on September 12, 1996, the Board gave final approval to the plan.

On September 29, 1996, Slinger commenced an action seeking both temporary and permanent injunctions enjoining the WIAA from placing Slinger in an athletic conference known as Conference A pursuant to the realignment conference plan adopted on September 12, 1996. The circuit court granted a temporary injunction, dated October 22, 1996, enjoining the WIAA from placing Slinger in Conference A and ordered the WIAA to place Slinger in an athletic conference which is reasonably close to Slinger and contains other schools of comparable size which offers similar programs.

The WIAA then petitioned this court for a supervisory writ or, in the alternative, to treat its petition as a petition for leave to appeal the circuit court's order granting the injunction. The WIAA also requested that the circuit court's order be stayed pending disposition of its petition. We granted the WIAA's request for a stay of the circuit court's order pending disposition of

---

[1] The July 29 proposal was actually Chickering's original May 3, 1996 proposal.

its petition. We further granted the WIAA's petition for leave to appeal.

The WIAA puts forth numerous arguments addressing the merits of the suit; however, two issues on appeal are dispositive. The first issue involves the scope of the circuit court's order for a temporary injunction. The second issue involves the nature of Slinger's claim.

### SCOPE OF TEMPORARY INJUNCTION

A decision to grant or deny a temporary injunction is within the circuit court's discretion and will only be reversed for an erroneous exercise of discretion. *See Spheeris Sporting Goods, Inc. v. Spheeris on Capitol*, 157 Wis. 2d 298, 305–06, 459 N.W.2d 581, 585 (Ct. App. 1990). The test is not whether the appellate court would grant the injunction but whether there was an erroneous exercise of discretion by the circuit court. *See Best Disposal Sys. v. Milwaukee Metro. Sewerage Dist.*, 128 Wis. 2d 537, 540, 386 N.W.2d 504, 505 (Ct. App. 1986). An erroneous exercise of discretion in the context of a temporary injunction occurs when the circuit court: (1) fails to consider and make a record of the factors relevant to its determination; (2) considers clearly irrelevant or improper factors; or (3) clearly gives too much weight to one factor. *See id.* An erroneous exercise of discretion may also be found where the circuit court made an error of law. *See id.*

The circuit court is to consider the following guidelines in making its determination:

> Injunctions, whether temporary or permanent, are not to be issued lightly. The cause must be substantial. *A temporary injunction is not to be issued*

370

*unless the movant has shown a reasonable probability of ultimate success on the merits.* Temporary injunctions are to be issued only when necessary to preserve the status quo. Injunctions are not to be issued without a showing of a lack of adequate remedy at law and irreparable harm, but at the temporary injunction stage the requirement of irreparable injury is met by showing that, without it to preserve the status quo *pendente* lite, the permanent injunction sought would be rendered futile.

*Id.* at 540–41, 386 N.W.2d at 505 (quoted source omitted); *see also* § 813.02 , STATS.

The merits of the case are not before this court in the instant appeal; the only question is whether the circuit court erroneously exercised its discretion. *See Akin v. Kewaskum Community Sch.*, 64 Wis. 2d 154, 159, 218 N.W.2d 494, 495 (1974). We conclude that it did.

Slinger's motion for temporary injunction sought the following relief:

A) Restraining and enjoining the defendant from transferring [Slinger] from its present affiliation with the Parkland Conference to any new conference created by the [WIAA].

B) Restraining and enjoining the [WIAA] from disbanding the Parkland Conference and implementing of an entirely new conference realignment for Southeastern Wisconsin.

C) Restraining and enjoining the WIAA from adding any additional teams to conferences, disbanding conferences, or taking any further action concerning conference realignment, except pursuant to and in

accordance with its own Constitution and rules.

Based on Slinger's allegation of "a breach of its implied contract as a member of the WIAA," the circuit court determined that it had the authority to proceed. The circuit court considered three criteria:[2] the distance to be traveled, the size of enrollment and the comparability of athletic and nonathletic programs, and it determined that the WIAA did not follow its own realignment policies when placing Slinger in Conference A.[3] Accordingly, the circuit court concluded that

---

[2] The Board of Control adopted the following criteria to be applied in considering realignment proposals, listed in descending order of importance with the recognition that *they are guidelines only*, not each will be followed in every case:

1. Each member school is entitled to be in a conference if it so desires. (See note under WIAA Constitution, Article VI, Section 10-A of HANDBOOK.)

2. There is no fixed number of schools required in a conference; the number may vary depending on many factors relating to others of these guidelines and availability of schools.

3. Distances to be traveled by competing schools shall be kept reasonable, and it is recognized greater distances may be required in specific situations related to geography.

4. Size of enrollment of schools shall be considered and guidelines previously established by the Board of Control shall be used but shall not be absolute in any situations.

5. Comparability of athletic participation first, then comparability of other school sponsored activities shall be considered.

6. Traditional rivalries shall be considered.

[3] The circuit court noted that: (1) distance was least important; and (2) "[i]n looking at the programs offered in both athletic and nonathletic areas it is clear that the size of the schools in Conference A impact on the programs . . . [and] the lack of programs in Conference A is a serious detriment."

"Slinger has a reasonable probability of success" because the implementation of the realignment plan as it applies to Slinger will irreparably injure Slinger and its students in their participation in athletic and nonathletic competition.

As a remedy, the circuit court refused to enjoin the WIAA from implementing the realignment plan for the 1997–98 school year—"[o]ne dissatisfied school should not be able to stop the whole program." However, the circuit court "believe[d] that Slinger is entitled to relief that will allow it to properly participate in interscholastic programs," so the court fashioned its own remedy enjoining the WIAA "from placing Slinger in Conference A or any other conference which does not meet the criteria. The WIAA shall put Slinger in a conference which is reasonably close to Slinger, comparable in size of schools, and, most importantly, have similar programs."

By fashioning its order in this way, the circuit court not only misused its discretion by failing to maintain the status quo, but its order also had the effect of denying Slinger's motion for a temporary injunction. Slinger's motion did not contemplate an injunction that implemented the realignment plan while simultaneously moving Slinger to a more "comparable" conference. Nevertheless, this is the situation before us today.

■ The purpose of "a temporary injunction is to *maintain the status quo*, not to change the position of the parties or *compel the doing of acts which constitute all or part of the ultimate relief sought." Codept, Inc. v. More-Way North Corp.*, 23 Wis. 2d 165, 173, 127 N.W.2d 29, 34 (1964) (emphasis added). Both parties agree that the status quo in this case would be the

present 1993–94 school year alignment. However, the temporary injunction (1) requires Slinger be moved into an alternative conference and (2) allows the WIAA to proceed with the 1997–98 realignment, as modified by the temporary injunction. Although the temporary injunction provides relief that is not specifically requested in Slinger's motion, it nevertheless provides the desired result—removal from Conference A. We conclude that the circuit court's action constitutes a misuse of its discretion.

## NATURE OF THE CLAIM

The WIAA also maintains that Slinger is not entitled to a temporary injunction because it is unlikely that Slinger will succeed on the merits because it has failed to state a claim for relief. A temporary injunction is not to be issued unless the moving party has shown a reasonable probability of ultimate success on the merits. *See Best Disposal Systems*, 128 Wis. 2d at 540, 386 N.W.2d at 505. Whether there is a chance of success on the merits in part turns on whether the moving party has stated a claim entitling it to relief. The sufficiency of Slinger's complaint is material because if it appears that Slinger is not entitled to a permanent injunction for failure to state a cognizable claim, the trial court misused its discretion by giving the same relief temporarily. *See Vredenburg v. Safety Devices Corp.*, 270 Wis. 36, 39, 70 N.W.2d 226, 228–29 (1955), *overruled on other grounds*, 85 Wis. 2d 54, 270 N.W.2d 168 (1978). The questions in this issue are whether the complaint states a cause of action and whether Slinger presented

sufficient evidence at the hearing to permit the conclusion that it had a reasonable probability of success.[4]

The WIAA strenuously contends that Slinger has not stated a claim. It relies on the supreme court's decision in *Attoe v. Madison Prof. Policemen's Ass'n,* 79 Wis. 2d 199, 206, 255 N.W.2d 489, 492–93 (1977):

> The courts are reluctant to interfere in the internal affairs of such organizations unless personal or property rights are involved . . . .
>
> [C]ourts will not look into the technical correctness of either the proceedings prescribed or the proceedings followed, and any reasonable or permissible construction which an order gives to its own constitution, laws, or rules will govern unless clearly subversive of personal or property rights. [Quoted sources omitted.] [Alterations omitted.]

The WIAA's argument is that Slinger may not challenge the conference realignment in court because what Slinger perceives as satisfactory alignment is not a "personal or property right." The question is more fundamental; it focuses on whether a contractual right even exists.

The *Attoe* decision establishes that in order to state a cognizable breach of contract claim, Slinger must allege "the existence, applicability and breach of

---

[4] For purposes of determining whether a claim for relief has been stated, the facts pleaded in the complaint must be accepted as true. A complaint is legally insufficient if it is "quite clear" that under no conditions can the plaintiff recover. The complaint fails this test if, upon a review of the allegations contained therein, it appears to a certainty that no relief can be granted under any set of facts which the plaintiffs could prove in support of them. *See Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 690, 317 N.W.2d 468, 471 (1982).

[a] contract right." *Id.* at 211, 255 N.W.2d at 495. *Attoe* was an appeal from an order sustaining a demurrer to a complaint. *See id.* at 204, 255 N.W.2d at 492. Attoe was removed as an officer and expelled as the director of the Madison Professional Policemen's Association (MPPA) after he made comments as an elector at a public hearing. He commenced an action against the MPPA in which he alleged as his first cause of action that the MPPA had breached a contract.[5] *See id.* at 203–04, 255 N.W.2d at 491–92.

Attoe's theory for his first cause of action was that the contract between MPPA and himself included the bylaws and resolutions passed by the board of directors. *See id.* at 207, 255 N.W.2d at 493. He contended that he was not seeking to vindicate a contract right to remain as an officer and director; rather, he was seeking to vindicate the right "to speak freely, as an elector, upon certain matters without being disciplined. . . ." *Id.* at 211, 255 N.W.2d at 495.

The trial court sustained MPPA's demurrer to the complaint. The trial court concluded that certain resolutions of MPPA's board of directors assuring that individual members could speak on issues as private citizens were not part of the contract between MPPA and Attoe; thus, MPPA did not breach the contract when it took disciplinary action against Attoe. *See id.* at 207, 255 N.W.2d at 493.

Before addressing the merits of Attoe's appeal, the supreme court set down the prevailing rule in Wisconsin:

> [T]o ascertain whether or not a breach of contract has occurred and to consider adequate remedies is

---

[5] The three other causes of action pled by Attoe are inconsequential to our analysis and decision.

not necessarily an interference with the internal affairs of the association if the complaint alleges that personal or property rights are involved.

*Id.* at 206, 255 N.W.2d at 493.

The supreme court then reversed the order sustaining MPPA's demurrer to the complaint and remanded the matter for further proceedings. *See id.* at 212, 255 N.W.2d at 495–96. The court held that as pled by Attoe, the contract between MPPA and him included the bylaws and resolutions. However, the resolution of whether there was a direct conflict between the bylaws and resolutions or whether the resolutions were an *ultra vires* act would go to the merits of the action. *See id.* at 209, 255 N.W.2d at 494. The supreme court then went on to state that to prevail on the merits Attoe would have to establish the contract right to speak freely, but at the demurrer stage of the proceedings his allegations that this contractual right existed were sufficient.[6] *See id.* at 211, 255 N.W.2d at 495.

Employing this same analysis requires us to first determine whether Slinger has properly pled the facts. Because this is an appeal from an order granting a temporary injunction, we must also determine if the evidence presented by Slinger to support its breach of contract claim against the WIAA is sufficient to permit the conclusion that it had a reasonable probability of success on the merits.

The parties do not dispute that the WIAA constitution, bylaws, and rules constitute a contract between

---

[6] The supreme court also held that Attoe had alleged facts sufficient to constitute a separate cause of action based on the inference that the internal rules of MPPA were interpreted so as to be subversive of Attoe's constitutional rights of free speech and political action. *See Attoe v. Madison Prof. Policemen's Ass'n,* 79 Wis. 2d 199, 211–12, 255 N.W.2d 489, 495 (1977).

the WIAA and the member schools. Accordingly, we address the applicability element. First, we start by examining Slinger's complaint. The contract right that Slinger alleges was breached was the right to a "reasonable" conference affiliation.

Next we consider the evidence Slinger submitted in support of its allegations at the hearing on its motion for a temporary injunction. Included in that evidence were the WIAA constitution, bylaws and rules relating to the process of conference alignment. What is important about these documents is how they reveal that the WIAA membership has given the Board tremendous discretion to execute the task of aligning conferences. Even where the written criteria in these documents arguably place some restriction on the Board's power, the potential force of the criteria are tempered with an exception. For example, the criteria mandate that when the Board aligns conferences, it "shall" keep the distance traveled by schools "reasonable." Nonetheless, this restriction is tempered by the recognition that "greater distances may be required . . . ."

The clear import of these documents is that the WIAA membership has agreed to give almost unfettered power to the Board to decide the issue of alignment, and has made no effort to limit that authority with any strict criteria. We conclude that the WIAA membership has collectively agreed that an individual member's conference alignment, while important, is not so important that it will be a "contractual right" that members are going to fight about in court.

In summary, the WIAA constitution, bylaws and rules on conference realignment do not provide individual members with a contractual right to a "reasonable" conference alignment. Therefore, we reverse because

the trial court erred in finding that Slinger had shown a reasonable probability of ultimate success on the merits.

*By the Court.*—Order reversed and cause remanded.