COURT OF APPEALS
DECISION
DATED AND FILED

March 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1298**

Cir. Ct. No. 2024CV1141

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

DISABILITY RIGHTS WISCONSIN,
LEAGUE OF WOMEN VOTERS OF WISCONSIN, MICHAEL R. CHRISTOPHER,
STACY L. ELLINGEN, TYLER D. ENGEL AND DONALD NATZKE,

   PLAINTIFFS-RESPONDENTS,

 V.

WISCONSIN ELECTIONS COMMISSION,
MEAGAN WOLFE, AS ADMINISTRATOR OF WEC,
DON MILLIS, AS COMMISSIONER OF WEC,
ROBERT SPINDELL, JR., AS COMMISSIONER OF WEC,
MARGE BOSTELMANN, AS COMMISSIONER OF WEC,
ANN JACOBS, AS COMMISSIONER OF WEC,
MARK THOMSEN, AS COMMISSIONER OF WEC AND
CARRIE RIEPL, AS COMMISSIONER OF WEC,

   DEFENDANTS,

WISCONSIN STATE LEGISLATURE,

   INTERVENOR-DEFENDANT-APPELLANT.

---

APPEAL from orders of the circuit court for Dane County: EVERETT D. MITCHELL, Judge. *Reversed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

¶1 GUNDRUM, P.J. The intervenor-appellant, the Wisconsin State Legislature (the Legislature),[1] appeals from orders of the circuit court granting a temporary injunction to Disability Rights Wisconsin, League of Women Voters of Wisconsin, Michael R. Christopher, Stacy L. Ellingen, Tyler D. Engel and Donald Natzke (hereinafter collectively Plaintiffs). The Legislature contends the court erred in granting the injunction. We agree.

## *Background*

¶2 Beginning in 2000, absentee voters could, in certain circumstances, receive a ballot for an election electronically from their local clerk.[2] *See* 1999 Wis. Act 182, § 97; WIS. STAT. § 6.87(3)(d) (1999-2000). In 2011, the legislature and governor enacted 2011 Wis. Act 75, which limited the privilege of receiving a

---

[1] When we are referring to the legislative body generally, as opposed to its capacity as a party to this action, "legislature" will not be capitalized.

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] *See* WIS. STAT. § 6.87(3)(d) (1999-2000):

> [A] municipal clerk of a municipality may, if the clerk is reliably informed by an absent elector of a facsimile transmission number or electronic mail address where the elector can receive an absentee ballot, transmit a facsimile or electronic copy of the absent elector's ballot to that elector in lieu of mailing under this subsection if, in the judgment of the clerk, the time required to send the ballot through the mail may not be sufficient to enable return of the ballot by the time provided under [§ 6.87](6).

ballot electronically to military and overseas absentee voters. Other absentee voters voted using paper ballots, as they did before electronic delivery of some ballots began in 2000.

¶3 Soon after Act 75 was enacted, it was challenged in federal court. In 2016, Western District of Wisconsin Federal Judge James Peterson held that the prohibition on the electronic delivery of absentee ballots to voters other than military and overseas voters was unconstitutional under the First and Fourteenth Amendments of the United States Constitution, and the court permanently enjoined commissioners and the administrator of the Wisconsin Election Commission (WEC) from enforcing that statutory provision. *One Wis. Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 907, 948, 964 (W.D. Wis. 2016). In 2020, the Seventh Circuit Court of Appeals reversed the federal district court, reinstating the Act 75 law and thus again limiting electronic absentee ballots to military and overseas absentee voters. *Luft v. Evers*, 963 F.3d 665, 676-77, 681 (7th Cir. 2020).

¶4 On April 16, 2024, Plaintiffs filed a complaint against WEC, its commissioners, and its administrator, alleging Wisconsin's current absentee voting scheme is unlawful as to print-disabled absentee voters. According to Plaintiffs, these are voters who desire to vote by absentee ballot, as all voters are permitted to do, but due to a disability, are incapable of "independently reading or marking printed materials." Plaintiffs claim that the current absentee voting scheme is unlawful because it does not afford them the ability to cast their absentee ballot votes independently and privately (i.e., without the direct assistance of another person)—by permitting them to receive their ballots electronically and in a manner that allows them to electronically mark their ballot by themselves using a device with assistive technology. More specifically, Plaintiffs allege the current absentee

3

voting scheme amounts to unlawful discrimination against print-disabled voters in violation of Title II of the Americans with Disabilities Act and Sec. 504 of the Rehabilitation Act and violates article III of the Wisconsin Constitution, which states that "[a]ll votes shall be by secret ballot." Plaintiffs further allege as to Ellingen, Disability Rights Wisconsin, and the League of Women Voters of Wisconsin that the voting scheme violates article 1, section 1 of the Wisconsin Constitution—Wisconsin's equal protection clause[3]—and the First and Fourteenth Amendments of the United States Constitution.

¶5 Plaintiffs moved for a temporary injunction ordering WEC "to make available" for print-disabled voters "an option to request and receive an electronic absentee ballot that can be marked electronically using an at-home accessibility device."[4] The Legislature moved to intervene. The circuit court granted the Legislature's motion, making it a party in this case.

¶6 Following a June 24, 2024 hearing on Plaintiffs' temporary injunction motion, the circuit court granted the injunction by way of two orders,[5] stating that "until the [c]ourt has an opportunity to rule on the merits of Plaintiffs'

---

[3] "Article I, [s]ection 1 [of the Wisconsin Constitution] has been interpreted as providing the same equal protection … rights afforded by the Fourteenth Amendment to the United States Constitution." *Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund*, 2018 WI 78, ¶35, 383 Wis. 2d 1, 914 N.W.2d 678.

[4] In their complaint, Plaintiffs also seek relief that would allow them to electronically *return* their ballot, but they abandoned that particular request for purposes of seeking temporary injunctive relief. Also, at the temporary injunction hearing, Plaintiffs made clear that for purposes of their injunction request, they "are not seeking any modifications to the MyVote [online] system." MyVote Wisconsin is an online election resource provided by WEC that, among other things, allows a voter to request an absentee ballot. *See* https://myvote.wi.gov/en-us/ (last visited Feb. 7, 2025).

[5] The second order resulted from the circuit court's reconsideration of its earlier order so as to "add additional citations to the law and to the factual record."

complaint," "[p]rovisions prohibiting municipal clerks from distributing absentee ballots by email, including WIS. STAT. § 6.87(3)(a), are unenforceable as applied to" self-certifying print-disabled absentee voters. It further ordered WEC to "facilitate the availability of electronically delivered (i.e., emailed) accessible ballots" for such voters who request an electronic absentee ballot from their local clerk. An "accessible" absentee ballot, the court explained, is one "capable of being read and interacted with, including marked, by a voter with a print disability using digital assistive technology such as a screen reader."

¶7    The Legislature appealed the injunction orders to this court and also moved the circuit court for a stay of its orders granting the temporary injunction. The circuit court denied that motion, and the Legislature then filed a motion in this court to stay the orders, which motion we granted. Plaintiffs subsequently filed a petition to bypass this court and have the Wisconsin Supreme Court resolve the Legislature's appeal of the circuit court's injunction orders. The supreme court denied that petition, so the matter of the Legislature's appeal of the temporary injunction orders is now before us.

*Discussion*

¶8    "A circuit court may issue a temporary injunction if four criteria are fulfilled: (1) the movant is likely to suffer irreparable harm if an injunction is not issued, (2) the movant has no other adequate remedy at law, (3) an injunction is necessary to *preserve* the status quo, and (4) the movant has a reasonable probability of success on the merits." *Gahl ex rel. Zingsheim v. Aurora Health Care, Inc.*, 2023 WI 35, ¶17, 413 Wis. 2d 418, 989 N.W.2d 561 (emphasis added) (quoting *Service Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶93, 393 Wis. 2d 38, 946 N.W.2d 35). Each of these four factors "must be fulfilled in order for a

5

temporary injunction to be granted." *Gahl*, 413 Wis. 2d 418, ¶24. We review a circuit court's grant or denial of a temporary injunction for an erroneous exercise of discretion. *Id.*, ¶18. Here, we need not address all of the injunction factors because the circuit court erroneously exercised its discretion in connection with the third factor, which resolves the matter. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶9      In granting the injunction, the circuit court stated as to the third factor that "[P]laintiffs showed an injunction is necessary to preserve the status quo because nobody disputes that 'before [2011 Wisconsin] Act 75's passage, voters with disabilities could request and receive an electronic absentee ballot by email that allowed a voter to use a screen reader to mark their ballot.'" (First alteration added.) Thus, the court apparently believed, erroneously, that the status quo was not the law in effect when Plaintiffs filed this action but the law as it was thirteen years earlier. The court's misunderstanding of the status quo is particularly confusing because at the June 24, 2024 injunction hearing, both the court and Plaintiffs appeared to have a correct understanding of the status quo as relevant to this case.

¶10      At that hearing, Plaintiffs' counsel clarified that while the "ultimate relief" they were seeking through their complaint had not changed, the relief they were seeking through a temporary injunction had. Counsel told the court, "What has been abandoned for purposes of Temporary Injunctive Relief is relief for the August primary and any changes to the MyVote." The court responded, "*So the status quo* for August is the same. The *status quo* for MyVote is the same, especially for August." (Emphasis added.) Counsel replied, "Right. Exactly,

your Honor." Thus, both the court and counsel, at least at that time, seemed to clearly understand that the state of the absentee voting law when Plaintiffs filed their lawsuit—the absentee voting scheme that allowed for the electronic delivery of ballots only to military and overseas absentee voters—was the "status quo." They understood that the absentee voting procedure modifications Plaintiffs were seeking for print-disabled voters constituted a *change* to the status quo, not preservation of it. As identified by the exchange with counsel, the court understood Plaintiffs were abandoning any request for the injunction order to change the status quo for the August election or with regard to MyVote.

¶11 Early during that same hearing, WEC's counsel aptly explained the status quo as to this case. Pointing out that absentee ballots for the November election would be "going out at the end of August. So that is just two months away," counsel explained:

> Plaintiffs are not asking to preserve the status quo, which is what temporary injunctions are for. They're asking to change current law.
>
> Under current law, clerks can send ballots electronically to military and overseas voters only. That is the status quo and has been for over a dozen years. The status quo is not the law prior to 2011 … [when] Act 75 [was enacted]. It is not the law that was in place when [Western District of Wisconsin Federal] Judge Peterson's [2016] Injunction was [put] in place in the One Wisconsin case.
>
> .…
>
> The relief Plaintiffs want, which is sending electronic ballots to a new class of voters, is a change in that law and that is not permitted in a Temporary Injunction Motion.
>
> .…
>
> … [T]here is a system for … municipal clerks sending ballots electronically to military and overseas voters.

7

The relief the Plaintiffs are requesting here would change that in at least two ways.

First, they're asking to extend it to a new class of voters[, which is] something that would have to be explained to clerks of who the group is that they want to be able to receive absentee ballot[s] electronically.

So in addition to it being a totally different group, it would also require the ability to not only send but also mark the ballots electronically.

… Under current law, there is no requirement for that. This Temporary Injunction that they're requesting would require that.

So that is another significant change.

.…

So what the Commission would have to do in order to implement this proposed injunction would be to develop, approve, and provide training for almost 2,000 local clerks.…

So it is my understanding that the municipal clerks would be the ones … that … would have to have the technical capability to make sure these ballots could be tagged so that they could be readable by voters who have the technology at home to mark them. And there was testimony at the Agency deposition that not all clerks have the technical capabilities.…

.…

This change would also have to be communicated to voters.…

¶12    Between its two temporary injunction orders, the circuit court provided only a one-sentence explanation for its conclusion that the status quo factor was satisfied. *See supra* ¶9. Plaintiffs' ten-sentence response-brief attempt to rehabilitate that explanation is insufficiently developed. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed."). Moreover, Plaintiffs' response relies on its own

legal conclusion that the current statutory absentee voting scheme *is* unlawful. This is not a permanent injunction we are reviewing; it is a temporary one. At this stage, the required legal showing is whether Plaintiffs have "a reasonable probability of success on the merits." *Gahl*, 413 Wis. 2d 418, ¶17. The circuit court here only determined, also without any analysis, that Plaintiffs made this showing, noting that it had not yet "ha[d] an opportunity to rule on the merits of Plaintiffs' complaint." Yet, with its injunction orders, the court invalidated a duly enacted law, doing so on the basis that it might one day determine that the law is invalid.

¶13 Additionally and disturbingly, as part of granting Plaintiffs a significant portion of the final relief they seek through their complaint, the circuit court ordered a very questionable remedy that simply treats print-disabled voters as if they were military or overseas absentee voters while adding a new requirement that the ballots delivered electronically to print-disabled absentee voters be "capable of being read and interacted with, including marked, by a voter with a print disability using digital assistive technology." Whether the court's remedy would work in practical application and satisfy constitutional and federal preemption requirements are matters that require further litigation. And, because whether a voter is physically incapable of successfully marking a paper ballot is not as objective and as easily proven as whether a voter is in the military or living overseas, self-certification may not be an adequate remedy to allow truly print-disabled voters to receive an electronic ballot while at the same time protecting

9

against persons fraudulently claiming a print disability so that they too may receive ballots electronically.[6]

¶14 We further note that in its orders denying the Legislature's motion for a stay pending appeal, the circuit court indicated that "the [L]egislature may prevail on the merits of the appeal," observed that "the issues in this case are unsettled issues of law that the court of appeals will review *de novo* and that a reasonable jurist may reach a different conclusion [on]," and noted that "[s]imilar cases in other states have gone both ways." The court did not even identify whether the strict scrutiny or rational basis standard applies to the Plaintiffs' equal protection claims. At this point, the entire legal posture is focused on whether Plaintiffs are *likely* to succeed on the merits. Much remains before this matter is ripe for a definitive ruling on the validity of the current absentee ballot scheme,

---

[6] In addition to highlighting the age-old and very important question of the proper role of the judiciary as opposed to the legislative branch and the executive branch, this case also highlights the practical reality that the legislative branch is particularly well-suited for enacting new policy initiatives, like the policy initiative the circuit court attempted to enact here. The legislature is particularly well-suited to address election fraud, confidentiality, and disclosure of personal identifying information concerns, concerns the Legislature first raised in the circuit court. As to potential fraud, for example, the legislature has already shown its related capability by putting in place a safeguard requiring certification by a medical professional for a disabled parking permit, *see* WIS. STAT. § 343.51, and would have the ability to craft legislation, with or without potential penalties for participatory fraud by such a professional, that could address this particular absentee ballot context.

To highlight the well-suited nature of the legislative branch, the "Assembly Committee on Campaigns and Elections" is a bipartisan body of seven elected representatives who deal with legislation and issues related to, well, "Campaigns and Elections." Such committees hold hearings at which any member of the public, including election experts, members and the administrator of WEC, and other interested citizens may testify. In addition, members of the committee, from both parties—lawmakers who actually vote on enacting policy changes into law—can work directly with experts and WEC to craft legislation or amendments to address specific issues that may arise as legislation works its way through the process. Contrast this with a single member of the judiciary who may or may not have any election law-related experience other than running for election him/herself and who is largely limited to testimony presented by the few hand-picked experts chosen by the parties during the life of a lawsuit.

yet the circuit court changed the law on absentee voting—changed the status quo—as if such a determination had been made.

¶15    Plaintiffs try to fashion an argument out of the fact that "clerks could email electronic ballots" before the 2011 enactment of Act 75 and the fact that in 2016, a federal district court enjoined the Act's electronic absentee ballot restrictions, thereby opening up electronic absentee ballots for all voters; that is until the Seventh Circuit Court of Appeals reversed that order in 2020.  Plaintiffs' effort goes nowhere.  To begin, their argument on these points is insufficiently developed, and thus, we need not address them.  Moreover, in contrast with a newly enacted law challenged before its effective date, here the status quo is the law as enacted in Act 75 in 2011.  That is the same status quo the circuit court and Plaintiffs' counsel acknowledged at the injunction hearing would be in effect for the August 2024 election.  It is the same status quo clerks and voters have been operating under for years.  And, it is the same status quo under which, according to their affidavits, the print-disabled Plaintiffs have successfully cast their votes time and time again for the last fourteen years since the enactment of Act 75.  That status quo—*the* status quo—only permits the electronic delivery of absentee ballots to military and overseas voters, no one else.  What Plaintiffs sought through a temporary injunction and what the circuit court gave them through its orders was a wholesale change of the status quo, not the preservation of it.[7]  As counsel for WEC aptly explained at the injunction hearing,

---

[7] Based upon Plaintiffs' logic that the pre-Act 75/pre-2011 state of the law is the status quo, the Legislature could just as logically claim that the pre-2000 law, prior to enactment of legislation allowing for the electronic delivery of ballots, is the status quo.

> Plaintiffs are not asking to preserve the status quo, which is what temporary injunctions are for. They're asking to change current law.
>
> Under current law, clerks can send ballots electronically to military and overseas voters only….
>
> ….
>
> The relief Plaintiffs want, which is sending electronic ballots to a new class of voters, is a change in that law and that is not permitted in a Temporary Injunction Motion.
>
> ….
>
> The relief that Plaintiffs are requesting here … would also require the ability to not only send but also mark the ballots electronically.
>
> … Under current law, there is no requirement for that….
>
> So that is another significant change.

Exactly.

¶16     As we stated in *School District of Slinger v. WIAA*, 210 Wis. 2d 365, 373, 563 N.W.2d 585 (Ct. App. 1997), a circuit court erroneously exercises its discretion by ordering a temporary injunction that "fail[s] to maintain the status quo." We made clear that "[t]he purpose of 'a temporary injunction is to maintain the status quo, not to … *compel the doing of acts which constitute all or part of the ultimate relief sought*.'" **Id.** (citing **Codept, Inc. v. More-Way North Corp.**, 23 Wis. 2d 165, 173, 127 N.W.2d 29 (1964)). The circuit court's injunction orders clearly breach this principle.

¶17     At this early juncture in the case, the circuit court issued orders "compel[ling] the doing of acts which constitute [a significant portion] of the ultimate relief" Plaintiffs seek. *See id.* (emphasis omitted). Before it even had "an opportunity to rule on the merits of Plaintiffs' complaint," the court ordered that

(1) "[p]rovisions prohibiting municipal clerks from distributing absentee ballots by email, including WIS. STAT. § 6.87(3)(a), are unenforceable" as to absentee voters who self-certify as having a print disability; and (2) WEC "shall facilitate the availability of [emailed] accessible absentee ballots … for absent electors who self-certify to having a print disability and who request from their municipal clerk an [emailed] ballot in lieu of mailing under WIS. STAT. § 6.87(3)(a)."  The court essentially ordered WEC to disregard the duly enacted statutory absentee voting scheme under which it has facilitated elections for absentee voters for years, and if this court had not stayed the circuit court's injunction orders, those orders would have upended the very scheme under which print-disabled absentee voters, including the Plaintiffs, have successfully voted for years.  As indicated, a temporary injunction may only be issued if it "is necessary to preserve the status quo." *Gahl*, 413 Wis. 2d 418, ¶17.  Here, the circuit court erroneously exercised its discretion by issuing temporary injunction orders that would have changed and, indeed, significantly disrupted the status quo.

¶18    Because the third factor for a temporary injunction is not satisfied, and the circuit court issued its injunction orders based upon an erroneous understanding of that factor, the court erroneously exercised its discretion in issuing the orders.

*By the Court.*—Orders reversed.

Recommended for publication in the official reports.