William C. MORTIMORE, Plaintiff-Respondent,
David M. NOSHAY, Plaintiff,

v.

MERGE TECHNOLOGIES INC.
n/k/a Merge Healthcare Inc.,
Defendant-Appellant.

Court of Appeals

*No. 2011AP1039. Submitted on briefs June 5, 2012.
—Decided September 18, 2012.*

2012 WI App 109

(Also reported in 824 N.W.2d 155.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert H. Friebert* and *Christopher M. Meuler* of *Friebert, Finerty & St. John, S.C.* of Milwaukee; *Salvador A. Carranza* and *Michael J. Summerhill*, pro hac vice of *Freeborn & Peters LLP* of Chicago, IL.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael H. Schaalman* and *Elizabeth C. Perkins* of *Quarles & Brady LLP* of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. Merge Technologies Inc. ("Merge") appeals a nonfinal order of the circuit court denying its motion to stay proceedings pending arbitration.[1] We conclude that the dispute between Merge and William C. Mortimore concerning whether an alleged oral contract eliminated the requirement to arbitrate Mortimore's breach of contract claims is itself an arbitrable issue. Accordingly, we reverse the circuit court and remand the matter for arbitration.

## BACKGROUND

¶ 2. This case arises out of a contractual dispute between Mortimore and Merge. Mortimore was a founder of Merge and served as its chairman from its

[1] This court, in a separate order, granted the petition for leave to appeal the nonfinal order on November 17, 2011. *See* WIS. STAT. RULE 809.50(3) (2009–10). All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise stated.

inception in 1987 until June 2006. Mortimore also served as Merge's CEO from 1987 until 2000, when the board of directors hired Richard Linden to replace Mortimore.

¶ 3. Mortimore and Merge entered into their first written employment contract in September 1997. The contract contained an arbitration provision requiring the parties to arbitrate any and all claims "arising out of or relating to this Agreement, or the breach hereof." The 1997 contract also prohibited oral modifications. In 2000, upon Mortimore's replacement as CEO, Mortimore and Merge entered into a new written employment contract, containing the same arbitration provision from the 1997 contract. In 2001, Mortimore and Merge entered into another employment contract, superseding the 2000 contract. The parties eventually entered into a new employment contract on March 1, 2004 that "supersede[d] the terms of the Employment Agreement dated December 21, 2001 as amended." Like the previous contracts, the 2004 contract contained an arbitration provision and prohibited oral modifications of the contract. Specifically, the 2004 contract stated:

17. Arbitration.

(a) Subject to the terms . . . below, upon the presentation of a written claim or claims (collectively "Claims") arising out of or relating to this Agreement, or the breach hereof, by an aggrieved party, the other party shall have thirty (30) days in which to make such inquiries of the aggrieved party and conduct such investigations as it believes reasonably necessary to determine the validity of the Claims. At the end of such period of investigation, the complained of party shall either pay the amount of the Claims or the arbitration proceeding described in Section 17(b) shall be invoked, subject to the terms . . . below.

(b) In the event that the Claims are not settled by the procedure set forth in Section 17(a), *the Claims shall be submitted to arbitration conducted in accordance with the Commercial Arbitration Rules ("Rules") of the American Arbitration Association ("AAA") except as amplified or otherwise varied hereby.*

(c) The parties shall submit the dispute to the Milwaukee, Wisconsin regional office of the AAA and the situs of the arbitration shall be Milwaukee, Wisconsin.

. . . .

19. General Provisions.

(c) Amendment and Waiver. *No amendment or modification of this Agreement shall be: valid or binding upon the Company unless made in writing and signed by an officer of the Company duly authorized by the Board or upon the Executive unless made in writing and signed by him.* The waiver by the Company of the breach of any provision of this Agreement by the Executive shall not operate or be construed as a waiver of any subsequent breach by him.

(Emphasis added.)

¶ 4.  In August 2005, following Merge's successful acquisition of a Canadian software company, which resulted in a substantial increase in Merge's revenue, Merge's board of directors delegated authority to a Compensation Committee to create new employment contracts for six Merge executives, including Mortimore and Linden. The committee worked on these new contracts from August 2005 until early 2006. According to minutes from the Compensation Committee meetings, the Merge executives desired consistent contracts; however, due to protracted negotiations with one particular executive, new contracts were not finalized. On February 8, 2006, the Compensation Committee ex-

pressly deferred making any decision on the contracts until after negotiating with that executive.

¶ 5.   In the meantime, beginning in January 2006, Merge began receiving anonymous whistleblower letters indicating that Merge was improperly reporting its financial position in order to make the company look more successful. Merge's Audit Committee commenced an investigation, and on February 25, 2006, Linden decided that no executives other than David Noshay and the newly-hired Bob White would receive new contracts. As a result, on March 1, 2006, the Compensation Committee placed on hold any new executive contracts except for those of Noshay and White.

¶ 6.   As a result of the investigation, Linden eventually was forced to resign, and Mortimore, a member of the board of directors, was named interim-CEO. Securities and Exchange Commission ("SEC") regulations required Merge to disclose Mortimore's employment contract as interim-CEO. Merge filed an SEC Form 8–K on May 16, 2006, stating that the 2004 contract was the controlling contract of Mortimore's employment.

¶ 7.   Following the filing of SEC Form 8–K, the Compensation Committee amended Mortimore's contract to reflect changes in his compensation stemming from his interim-CEO position. The Compensation Committee and Mortimore then worked towards drafting a new written contract for Mortimore. As of June 19, 2006, two substantively different contract drafts were being edited by two different people—one draft was a new contract, the other amended Mortimore's 2004 contract. That same day, Anna Hajek, the head of the Compensation Committee, prepared a draft cover letter for a new contract for Mortimore. The new contract did not contain an arbitration clause. The letter and contract, however, were never sent or signed.

¶ 8.  The following day, an attorney conducting the Audit Committee's investigation forwarded emails to Merge's outside counsel indicating that Mortimore interfered with Merge's audit confirmation process. Hajek was subsequently instructed not to offer Mortimore a new contract until the investigation was complete. Merge's board of directors eventually sought Mortimore's resignation. Mortimore resigned on June 30, 2009.

¶ 9.  Mortimore retained separate counsel to represent him in the various law suits and investigations that stemmed from the anonymous whistleblower letters. Pursuant to Merge's by-laws and WIS. STAT. § 180.0853, Merge's board of directors advanced Mortimore's legal fees. The board ceased paying Mortimore's legal expenses, however, in February 2009. This eventually led Mortimore to file a four-count complaint alleging, among other things, breach of contract for "refusing to pay any of the amounts due [under the contract]."

¶ 10.  Merge moved to dismiss certain claims and stay the remaining claims pending arbitration of Mortimore's breach of contract allegation pursuant to the arbitration clause contained in the 2004 contract. Mortimore filed an amended complaint, effectually alleging that the terms of the 2004 contract had been superseded by oral terms and conditions, essentially creating a new contract that did not contain an arbitration provision. Merge renewed its motion to dismiss and stay pending arbitration. The circuit court conducted an evidentiary hearing to determine whether the 2004 contract had been superseded by an oral contract in 2006 that eliminated the arbitration requirement. The circuit court found, based on Merge's actions and conduct, that:   (1) Mortimore and Merge entered into a new oral employment contract on or about June 15, 2006; (2) the 2006 oral contract eliminated the manda-

465

tory arbitration provision of the 2004 contract; and (3) despite the new contract not being signed, Merge demonstrated an intent to contract with Mortimore, rendering the 2006 oral contract effective.

¶ 11. Merge filed for leave to appeal the circuit court's nonfinal order denying Merge's Motion to Stay Pending Arbitration. We granted Merge's petition. This appeal follows.

## DISCUSSION

¶ 12. On appeal, Merge argues that the question of whether the alleged 2006 oral contract superseded the 2004 written contract, thereby eliminating the arbitration requirement of Mortimore's breach of contract claims, is itself an arbitrable issue. Specifically, Merge contends that the circuit court erroneously failed to refer the dispute to arbitration because: (1) issues arising out of the 2004 contract are to be resolved by an arbitrator; and (2) Mortimore agreed to arbitrate the issue of arbitrability because the 2004 contract incorporated the American Arbitration Association's ("AAA") Commercial Arbitration Rules, suggesting that questions of arbitrability are for an arbitrator, rather than the court. We agree.

**Applicable Law.**

■

¶ 13. At the outset, we note that Mortimore does not challenge the validity of the 2004 contract; rather, he argues that a 2006 oral agreement superseded the 2004 contract, thereby eliminating the 2004 contract's mandatory arbitration clause. As such, Mortimore contends that his breach of contract claims are not subject to arbitration. Therefore, at issue in this appeal is solely

whether Mortimore's claims regarding the alleged 2006 oral contract fall under the mandatory arbitration provision of the 2004 contract, which applies to all claims arising out of the 2004 contract and adopts the AAA Commercial Arbitration Rules. Merge's Motion to Stay Pending Arbitration involves issues of contract interpretation and a determination of substantive arbitrability, questions of law we review *de novo. See Joint School Dist. No. 10, City of Jefferson v. Jefferson Ed. Ass'n,* 78 Wis. 2d 94, 101–02, 253 N.W.2d 536 (1977).

¶ 14. Arbitration in Wisconsin is governed by WIS. STAT. ch. 788, the Wisconsin Arbitration Act. The Act reflects the "sensible policy of this state . . . to promote arbitration as a viable and valuable form of alternative dispute resolution." *Manu-Tronics, Inc. v. Effective Mgmt. Sys., Inc.,* 163 Wis. 2d 304, 311, 471 N.W.2d 263 (Ct. App. 1991). This principle is specifically reflected in WIS. STAT. § 788.02, which provides parties with the opportunity to stay litigation pending arbitration:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

¶ 15. "As guidance in determining the court's function in arbitration disputes, Wisconsin has adopted the general teachings set forth in the *Steelworkers Trilogy." Cirilli v. Country Ins. & Fin. Servs.,* 2009 WI

App 167, ¶ 12, 322 Wis. 2d 238, 776 N.W.2d 272.[2] The *Steelworks Trilogy* provides first that arbitration is a matter of contract, and as such, no party can be compelled to arbitrate a matter which he or she has not agreed to submit to arbitration. *Cirilli*, 322 Wis. 2d 238, ¶ 12. Second, the question of arbitrability is one for judicial determination unless the parties expressly agree otherwise. *AT&T Tech., Inc. v. Communication Workers of America*, 475 U.S. 643, 648–50 (1986). Third, in determining whether the parties have agreed to submit a matter for arbitration, we do not consider the merits of the underlying claim. *Id.* "It necessarily follows that, even if it appears to the court to be frivolous, the claim at issue is to be decided not by the court asked to order arbitration but, as the parties have agreed, by the arbitrator." *Cirilli*, 322 Wis. 2d 238, ¶ 13. Finally, contracts that contain arbitration clauses carry a strong presumption of arbitration, therefore doubts are resolved in favor of arbitration coverage. *AT&T Tech.*, 475 U.S. at 648–50.

¶ 16. In essence, in determining whether a dispute is arbitrable, our "function is limited to a determination of whether: (1) there is a construction of the arbitration clause that would cover the grievance on its face and (2) whether any other provision of the contract specifically excludes it." *Cirilli*, 322 Wis. 2d 238, ¶ 14.

¶ 17. With these principles in mind, we turn to the question of whether the circuit court erred in ruling

---

[2] The *Steelworkers Trilogy* consists of *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). *See Cirilli v. Country Ins. & Fin. Servs.*, 2009 WI App 167, ¶ 12 n.5, 322 Wis. 2d 238, 776 N.W.2d 272.

that Merge's right to enforce the mandatory arbitration clause in the 2004 contract was superseded by an alleged 2006 oral agreement, which did not contain an arbitration clause.

¶ 18. The heart of Mortimore's argument is, in essence, that the parties agreed to execute a new written contract without an arbitration clause. Because Mortimore contends that this alleged oral agreement is enforceable, he argues his breach of contract claims are not subject to arbitration. Mortimore is mistaken.

¶ 19. First, The 2004 contract states that "[n]o amendment or modification of this Agreement shall be valid or binding upon the Company unless made in writing and signed by an officer of the Company duly authorized by the Board or upon the Executive unless made in writing and signed by him." Although the circuit court found that Merge's conduct effectively created an oral contract, the record shows that no such modifications or changes eliminating an arbitration requirement were ever made in writing, as required by plain language of the 2004 contract. Mortimore's arguments essentially reveal a process of negotiation by which Merge agreed to new contractual terms as a result of Mortimore's position as interim-CEO. The 2004 contract contemplated that amendments or modifications, such as those negotiated between Mortimore and Merge, would be enforceable and binding only if made in writing. Thus, any dispute pertaining to the amendment or modification of the 2004 contract necessarily arises out of the 2004 contract, thereby maintaining the arbitration clause. By not challenging the validity of the 2004 contract, Mortimore implicitly agrees that if the 2004 contract controls, arbitration is required. Any determination that an alleged oral agree-

ment superseded the 2004 contract and eliminated the requirement to arbitrate Mortimore's breach of contract claims is a determination on the merits of Mortimore's claim. As stated, we do not make determinations on the merits. *See AT&T Tech.*, 475 U.S. at 648–50.

¶ 20.   Second, the 2004 contract specifically adopts the AAA Commercial Arbitration Rules, which provide that decisions as to the arbitrability of a claim are to be determined by arbitrators. Specifically, Rule 7(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope or validity of the arbitration agreement." The act of incorporating the AAA rules suggests that the parties' intended to leave the question of arbitrability of Mortimore's claims to an arbitrator. Many other jurisdictions that have considered this issue agree "that an arbitration provision's incorporation of the AAA Rules—or other rules giving arbitrators the authority to determine their own jurisdiction—is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009). *See also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472–73 (1st Cir. 1989). Given Wisconsin's strong policy promoting arbitration, we conclude, like many other jurisdictions, that the parties' adoption of the AAA Rules in the 2004 contract required arbitration of the question of whether an oral agreement superseded the 2004 contract.

470

## CONCLUSION

¶ 21.  For the foregoing reasons, we conclude that the circuit court erroneously denied Merge's Motion to Stay Pending Arbitration. The issue of whether the alleged 2006 agreement superseded the 2004 contract, and therefore did not require arbitration of Mortimore's breach of contract claims, is a question for the arbitrator. Accordingly, we reverse and remand this matter for arbitration.

*By the Court.*—Order reversed and cause remanded.