**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 30, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2615**

STATE OF WISCONSIN

Cir. Ct. No. **2024CV1941**

IN COURT OF APPEALS
DISTRICT IV

---

HERBAL ASPECT LLC,

    PLAINTIFF-APPELLANT,

ALAN ROBINSON,

    PLAINTIFF-CO-APPELLANT,

  V.

ALEXANDER GISH, MATTHEW NELSON, AND RACHEL CEFALU,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed in part; reversed in part and cause remanded.*

Before Graham, P.J., Blanchard, and Taylor, JJ.

¶1    BLANCHARD, J. This appeal presents the following novel question involving pre-arbitration procedure in Wisconsin. When the merits of a civil action are to be resolved through arbitration, does the circuit court retain its general authority to grant a motion for a temporary injunction under WIS. STAT. § 813.02(1) (2023-24) to preserve the rights of the parties pending arbitration?[1] Or, does WIS. STAT. § 788.02—which obligates courts to "stay the trial of the action" when arbitration is required—categorically bar such relief? We conclude that courts retain authority to issue temporary injunctions in advance of arbitration proceedings. This conclusion is consistent with both the general equitable power of a court to issue a temporary injunction and its obligation to enforce arbitration agreements.

¶2    In this civil action, Alan Robinson and Herbal Aspect LLC (collectively, "the Robinson parties") moved for a temporary injunction in the circuit court. The court declined to decide the motion on the merits, reasoning that it lacked authority to grant injunctive relief because the court intended to issue a stay under WIS. STAT. § 788.02.

¶3    The court appears to have relied on case law establishing that courts may not consider the merits of underlying disputes in determining whether arbitration is required. *See, e.g.*, ***L.G. v. Aurora Residential Alts., Inc.***, 2019 WI 79, ¶17, 387 Wis. 2d 724, 929 N.W.2d 590. While the parties here agree that the underlying dispute is subject to arbitration, they disagree about whether the rule against weighing the merits in deciding whether arbitration is required also

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

prevents the circuit court from deciding a motion to temporarily preserve the status quo pending arbitration.

¶4 On the facts of this case, nothing in Wisconsin's arbitration statutes or case law prevented the circuit court from applying the standards in WIS. STAT. § 813.02(1)(a) to decide the Robinson parties' temporary injunction motion. Moreover, the arbitration rules that the parties adopted as part of their agreement to arbitrate contemplate the possibility of court-ordered temporary injunctive relief. Accordingly, we reverse and remand for the circuit court to decide the Robinson parties' temporary injunction motion.[2]

## BACKGROUND

¶5 Alan Robinson filed a civil complaint in the circuit court naming Alexander Gish, Matthew Nelson, and Rachel Cefalu as defendants (collectively, "the Gish parties"). The underlying dispute involves claims over the ownership and control of a company, Herbal Aspect LLC. Robinson seeks relief on his own behalf and on behalf of Herbal Aspect, and the company is named as a co-plaintiff.

¶6 The Gish parties moved the circuit court to "stay the trial of the action," pursuant to WIS. STAT. § 788.02, until the parties could complete arbitration. This was based on an arbitration agreement that is contained in Herbal Aspect's operating agreement. The arbitration agreement states that "any controversy or claim arising out of or relating to" the operating agreement would

---

[2] The Robinson parties filed a separate motion in the circuit court, before the court entered the stay for arbitration, requesting a "declaration" regarding the legal representation of Herbal Aspect. The court declined to address the merits of this declaration motion, just as it declined to address the injunction motion. For reasons we discuss below, after we discuss the temporary injunction motion issue, we affirm the circuit court's denial of the declaration motion.

3

be "finally settled" according to a set of arbitration rules and procedures that the arbitration agreement identifies.

¶7     While the stay motion was pending, the Robinson parties brought two of their own motions in the circuit court. The motion that leads to the primary issue in this appeal seeks a temporary injunction under WIS. STAT. § 813.02(1)(a). The injunction would restrain the Gish parties from taking certain actions relating to the management of company resources and employees. The Robinson parties argued that they met the requirements for this temporary relief from the court, and contended that the arbitration rules chosen by the parties did not prohibit them from seeking the injunction.

¶8     The other motion was filed in the name of the company by a law firm, different from the law firm retained by Robinson to represent himself individually. This motion requested that the court declare that the first law firm "was properly retained by the Company and may appear on behalf of Herbal Aspect in this action."

¶9     The Gish parties opposed both motions. As pertinent to this appeal, they argued that both forms of relief sought by the Robinson parties are precluded by case law interpreting WIS. STAT. § 788.02, and that none of the arbitration rules incorporated into the operating agreement permit a party to pursue temporary injunctive relief from a court.

¶10    At the hearing on the Gish parties' motion for a stay pending arbitration, the circuit court noted that the parties agreed that all of the claims in the Robinson parties' complaint must be arbitrated.

¶11    Following oral argument on the two motions, the circuit court declined to rule on the merits of either.  This was based on the court's conclusion that, in each case, granting the requested relief would require the court to take the inappropriate step of resolving "substantive matters" reserved for arbitration, and that Wisconsin courts cannot make decisions that involve issues that are to be resolved in arbitration.  The court did not further discuss the Robinson parties' motions, nor did it address the parties' arguments about the application of the arbitration rules incorporated into the Herbal Aspect operating agreement.

¶12    The circuit court granted the Gish parties' motion to stay the underlying action pending arbitration.

¶13    The Robinson parties filed an appeal, and we granted leave to appeal.  *See Herbal Aspect LLC v. Gish*, No. 24AP2615, slip op. recommended for publication (WI App Mar. 5, 2026) (explaining that this court retains jurisdiction over this appeal).

## DISCUSSION

¶14    This appeal calls for the interpretation and application of statutes and case law, which are issues of law that we review de novo.  *L.G.*, 387 Wis. 2d 724, ¶7; *Meyers v. Bayer AG*, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448.

¶15    We review for an erroneous exercise of discretion a circuit court's decision whether to grant or deny a motion for a temporary injunction.  *Zingsheim v. Aurora Health Care, Inc.*, 2023 WI 35, ¶18, 413 Wis. 2d 418, 989 N.W.2d 561.  A court can erroneously exercise its discretion by making an error of law.  *School Dist. of Slinger v. WIAA*, 210 Wis. 2d 365, 370, 563 N.W.2d 585 (Ct. App. 1997).  One potential category of legal error is a court's decision not to exercise its

5

discretion based on the mistaken view that it lacks the power to do so. *See Werner v. Hendree*, 2011 WI 10, ¶59, 331 Wis. 2d 511, 795 N.W.2d 423.

## I. Injunctive Relief Pending Arbitration

¶16 The Robinson parties argue that the circuit court erred by concluding that it lacks authority to consider the Robinson parties' motion for a temporary injunction because the underlying claims are subject to arbitration. More specifically, they contend that neither case law nor the pertinent Wisconsin statute, WIS. STAT. § 788.02, preclude a circuit court from granting temporary injunctive relief when the court determines that a stay of the trial of the action pending arbitration is appropriate. In support of their argument, the Robinson parties cite the great weight of federal courts that have applied provisions of the Federal Arbitration Act that match WIS. STAT. ch. 788 in analogous situations. Further, they argue that the specific arbitration rules that the parties have agreed to use do not prohibit a party from seeking court-ordered temporary relief.

¶17 The Gish parties largely rest their argument on two features of Wisconsin law. First, case law prohibits circuit courts from considering the merits of the underlying dispute in deciding whether issues must be arbitrated. Second, when a court considers a temporary injunction motion, one factor that the court must weigh is the likelihood that the underlying claims will ultimately be successful. Based on these two points, the Gish parties argue that the court here is prohibited from ruling on the Robinson parties' temporary injunction motion because that would require the court to assess the likelihood that they will ultimately prevail on their claims in arbitration. In the alternative, the Gish parties may also intend to argue that the arbitration rules that the parties agreed to use do not contemplate that a party may seek court-ordered temporary injunctive relief.

¶18     For reasons explained below, we conclude that circuit courts have the authority to consider granting temporary injunctive relief, despite the fact that "the trial of [a civil] action" is to be stayed pending arbitration.  *See* WIS. STAT. § 788.02.  We begin by explaining why we reject the Gish parties' contention that this issue is resolved based on case law that addresses how courts resolve disputes over what must be arbitrated, which is often referred to as the topic of arbitrability. After that, we explain why our conclusion is supported by pertinent Wisconsin statutes and persuasive authority from other jurisdictions.  Further below, we explain our conclusion that the arbitration rules that the parties agreed to use here contemplate the potential for court-ordered temporary injunctive relief, when warranted under WIS. STAT. § 813.02(1)(a).

*Arbitrability*

¶19     WISCONSIN STAT. ch. 788, "the Wisconsin Arbitration Act" reflects a policy choice of "'encouraging arbitration as an alternative to litigation.'"  *U.S. Bank Nat'l Ass'n v. Klein*, 2024 WI App 7, ¶12, 410 Wis. 2d 598, 3 N.W.3d 726 (quoting *Kemp v. Fisher*, 89 Wis. 2d 94, 100, 277 N.W.2d 859 (1979)); *see also* WIS. STAT. § 788.01 (stating that agreements to arbitrate "shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract").  WISCONSIN STAT. § 788.02 furthers this policy by providing one "mechanism[]" for "determining whether there is an

7

enforceable arbitration agreement, and ensuring the parties abide by its terms." ***L.G.***, 387 Wis. 2d 724, ¶17.[3]  Section 788.02 provides:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

¶20     As noted, one feature of settled Wisconsin case law applying WIS. STAT. § 788.02 is that circuit courts must disregard the merits of the underlying dispute in deciding arbitrability.  The court's role in applying § 788.02 "is entirely self-contained," because the court "simply determines the forum for resolution of the dispute without addressing the dispute's merits."  ***L.G.***, 387 Wis. 2d 724, ¶17. That is, a court "is not to rule on the potential merits of the underlying claim" when "deciding whether the parties have agreed to submit a dispute to arbitration." ***Cirilli v. Country Ins. & Fin. Servs.***, 2009 WI App 167, ¶13, 322 Wis. 2d 238, 776 N.W.2d 272 (citing Wisconsin case law that in turn cites ***AT & T Techs., Inc. v. Communications Workers of Am.***, 475 U.S. 643, 649-50 (1986)).  Indeed, even if the underlying claim seems frivolous to the court, the claim's merits are "to be decided not by the court asked to order arbitration but, as the parties have agreed, by the arbitrator."  ***Id.***; *see also* ***First Weber Grp., Inc. v. Synergy Real Est. Grp.,***

---

[3]  The other mechanism for raising the issue of whether there is an enforceable arbitration agreement is established in WIS. STAT. § 788.03.  This allows parties to file petitions in the circuit court for orders compelling arbitration.  But § 788.03 does not apply when, as here, a lawsuit has already been commenced by a party allegedly bound by an arbitration agreement.  *See* ***Payday Loan Store of Wis. Inc. v. Krueger***, 2013 WI App 25, ¶10, 346 Wis. 2d 237, 828 N.W.2d 587.

*LLC*, 2015 WI 34, ¶32, 361 Wis. 2d 496, 860 N.W.2d 498 (a court determining arbitrability "'has no business weighing the merits'" of the underlying dispute (quoted source omitted)).

¶21    The Gish parties argue that this rule that circuit courts must ignore the merits of the underlying dispute settles the issue in their favor. This is so, they contend, because the circuit court here could not rule on the temporary injunction motion without weighing, as one factor, the Robinson parties' chances of ultimate success on the merits of their underlying claims. *See Milwaukee Deputy Sheriffs' Ass'n v. Milwaukee County*, 2016 WI App 56, ¶20, 370 Wis. 2d 644, 883 N.W.2d 154 ("[a] court may issue a temporary injunction when the moving party demonstrates four elements" including that "the movant has a reasonable probability of success on the merits"); WIS. STAT. § 813.02(1)(a) (circuit court may grant temporary injunction under circumstances including that "it appears from a party's pleading that the party is entitled to judgment").

¶22    The problem with this argument is that the Gish parties confuse two distinct judicial functions. One function is a circuit court's obligation to determine whether a dispute must be arbitrated. This is a gatekeeping function: the court determines whether the dispute must be arbitrated. *See L.G.*, 387 Wis. 2d 724, ¶¶15-17. A separate function is a court's ability to exercise its equitable power to preserve the status quo in a lawsuit pending resolution of the merits. This second function can serve as a bridge to arbitration: the court determines whether the movant has shown the factors needed to support an injunction to preserve the status quo pending arbitration. *See School Dist. of Slinger*, 210 Wis. 2d at 373 (the purpose of temporary injunctions is to maintain the status quo).

¶23     With that distinction in mind, the opinions that the Gish parties cite describe the first, gatekeeping function, but only in the limited context of how gatekeeping can occur.[4]  None address the second, bridging function in the context of a case that will be arbitrated, and they certainly do not prohibit the exercise of the second function in such a case.  Nor do the Gish parties identify authority that would extend the rule against weighing the merits of an underlying action when deciding arbitrability to other kinds of issues that could be presented to a circuit court when the underlying dispute is to be arbitrated.

¶24     One statement in an opinion of our supreme court, not cited by the parties, could support the Gish parties' position, if the statement were considered out of context.  However, when considered in proper context, it does not help them.  In *Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 2018 WI 112, 384 Wis. 2d 669, 920 N.W.2d 767, the court stated that, "when the parties have contracted to arbitrate, the court's 'function is limited to a determination of whether: (1) there is a construction of the arbitration clause that would cover the grievance on its face and (2) whether any other provision of the contract specifically excludes it.'" *Id.*, ¶41 (quoting *Mortimore v. Merge Techs. Inc.*, 2012 WI App 109, ¶16, 344 Wis. 2d 459, 824 N.W.2d 155).  When

---

[4] *See* ***L.G. v. Aurora Residential Alts., Inc.***, 2019 WI 79, ¶17, 387 Wis. 2d 724, 929 N.W.2d 590 (the court "*determines the forum for resolution of the dispute* without addressing the dispute's merits" (emphasis added)); ***Cirilli v. Country Ins. & Fin. Servs.***, 2009 WI App 167, ¶13, 322 Wis. 2d 238, 776 N.W.2d 272 ("*In deciding whether the parties have agreed to submit a dispute to arbitration*, the court is not to rule on the potential merits of the underlying claim." (emphasis added)); ***First Weber Grp., Inc. v. Synergy Real Est. Grp., LLC***, 2015 WI 34, ¶32, 361 Wis. 2d 496, 860 N.W.2d 498 (warning against weighing merits "'[w]hen the court *determines arbitrability*'" (emphasis added; quoted source omitted)); *see also* ***Mortimore v. Merge Techs. Inc.***, 2012 WI App 109, ¶15, 344 Wis. 2d 459, 824 N.W.2d 155 ("*in determining whether the parties have agreed to submit a matter for arbitration*, we do not consider the merits of the underlying claim" (citing ***AT & T Techs., Inc. v. Communications Workers of Am.***, 475 U.S. 643, 648-50 (1986) (emphasis added))).

read in isolation, this statement could suggest the following rule: a circuit court presented with a stay application under WIS. STAT. § 788.02 lacks authority to take any actions other than to decide arbitrability and to deny or grant the stay.

¶25     Yet, like the opinions relied on by the Gish parties discussed above, this statement in *Midwest Neurosciences* was made in the specific context of deciding arbitrability.  *See id.*, ¶¶38, 40-45, 51.  Given this context, we do not construe our supreme court to have intended to expand the point beyond what it stated in *Mortimore*.  *See Mortimore*, 344 Wis. 2d 459, ¶16 ("In essence, *in determining whether a dispute is arbitrable*, our 'function is limited to a determination of whether: (1) there is a construction of the arbitration clause that would cover the grievance on its face and (2) whether any other provision of the contract specifically excludes it.'" (quoting *Cirilli*, 322 Wis. 2d 238, ¶14) (emphasis added)).  That is, we see no reason to think that the supreme court in *Midwest Neurosciences* decided to enlarge the point, which is strongly implied in the other opinions that we have cited, that the rule is limited to the context of deciding issues of arbitrability.  This includes *L.G.*, which was decided after *Midwest Neurosciences*.

¶26     Moreover, elsewhere in *Midwest Neurosciences*, the court noted that, in cases headed to arbitration, circuit courts retain other roles in addition to deciding arbitrability, even if those roles are limited.  *See Midwest Neurosciences*, 384 Wis. 2d 669, ¶49 (discussing WIS. STAT. §§ 788.10-.12); *see also Marlowe v. IDS Prop. Cas. Ins. Co.*, 2013 WI 29, ¶¶17-21, 60, 346 Wis. 2d 450, 828 N.W.2d 812 (noting, in the context of a dispute over discovery procedure in arbitration, that "interlocutory appeal" of arbitrators' pre-award decisions to circuit court may be permissible under "unusual circumstances").

¶27 Federal court opinions which we consider to be persuasive reject arguments that resemble the Gish parties' arguments. *See **Pruett v. WESTconsin Credit Union***, 2023 WI App 57, ¶18, 409 Wis. 2d 607, 998 N.W.2d 529, ("Wisconsin courts may look to 'federal court interpretations' of the Federal Arbitration Act 'as an aid in the resolution' of cases regarding the Wisconsin Arbitration Act" (quoting ***Employers Ins. of Wausau v. Jackson***, 190 Wis. 2d 597, 611 n.5, 527 N.W.2d 681 (1995))). Federal court precedent is useful in this context because the federal courts operate in a legal context that resembles Wisconsin's. District courts, like Wisconsin circuit courts, are barred from weighing the merits of the underlying dispute when determining whether the dispute should be arbitrated. *See **Henry Schein, Inc. v. Archer & White Sales, Inc.***, 586 U.S. 63, 68-69 (2019). And, also like Wisconsin circuit courts, federal district courts assess the likelihood of a movant's success on the merits when determining whether to issue a temporary injunction. *See, e.g.*, ***Teradyne, Inc. v. Mostek Corp.***, 797 F.2d 43, 51 (1st Cir. 1986) (in order to grant injunctive relief, the court must determine, in part, that the movant shows a likelihood of ultimate success on the merits of the underlying action).[5]

¶28 With that background, we consider the federal court case law to be persuasive in explaining that the rule against courts weighing merits in deciding arbitrability does not preclude courts from considering injunctive relief in cases that must be arbitrated. *See, e.g.*, ***Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley***, 756 F.2d 1048, 1051 (4th Cir. 1985). That is, federal case law is

---

[5] In the federal context, pertinent rules refer to a "preliminary injunction" as the form of relief that is analogous to a "temporary injunction" issued under WIS. STAT. § 813.02. *See* FRCP 65(a).

persuasive on the point that a court's consideration of the likelihood that a movant for a temporary injunction will ultimately succeed on the underlying merits of the dispute to be arbitrated is not incompatible with the court separately determining whether that dispute must be arbitrated. *See Teradyne*, 797 F.2d at 50 (stating that there was "no incompatibility between" the U.S. Supreme Court's discussion of the limited inquiry under 9 U.S.C. §§ 3-4 and "the availability of preliminary injunctive relief to preserve the meaningfulness of the arbitration process"); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811 (3d Cir. 1989) (rejecting argument that allowing courts to issue temporary injunctions "would necessarily embroil the courts in the merits of the controversy more appropriately left to the arbitrator").

¶29 For these reasons, we reject the Gish parties' argument that the authority of Wisconsin circuit courts to issue temporary injunctions in this context is resolved in the Gish parties' favor by case law that prohibits courts from considering the underlying merits when they determine arbitrability.

*Availability of Judicial Temporary Injunctions in Cases Headed to Arbitration*

¶30 Having rejected the Gish parties' argument based on case law addressing arbitrability, we note that the parties do not cite, and we do not independently identify, binding Wisconsin law that construes pertinent provisions of the Wisconsin Arbitration Act to resolve the core issue. Accordingly, we now interpret the pertinent statutory authority as a matter of first impression, taking into account "guidance from other jurisdictions interpreting similar provisions of their own arbitration acts." *See Marlowe*, 346 Wis. 2d 450, ¶18 ("In the absence of binding authority construing the Wisconsin Arbitration Act, we look for

guidance to decisions from other jurisdictions interpreting similar provisions of their own arbitration acts.").

¶31 The parties do not direct us to any provision of the Wisconsin Arbitration Act other than WIS. STAT. § 788.02 that could bear directly on the availability of a temporary injunction of a dispute that will be resolved in arbitration, and we are not aware of any other pertinent provisions.

¶32 WISCONSIN STAT. § 788.02, like its federal analog, 9 U.S.C. § 3 of the Federal Arbitration Act, does not explicitly bar a circuit court from entering a temporary injunction to preserve the status quo in a case that is to be arbitrated. *See Bradley*, 756 F.2d at 1052 (noting that 9 U.S.C. § 3 "does not contain a clear command abrogating" the authority of federal district courts to enter preliminary injunctions).[6] What § 788.02 specifically directs is only that, when an issue must be arbitrated, the circuit court "shall … stay the trial of the action" until the arbitration "has been had." *See Bradley*, 756 F.2d at 1052 (9 U.S.C. § 3 "states only that the court shall stay the 'trial of the action'; it does not mention preliminary injunctions or other pre-trial proceedings").

---

[6] Under 9 USCA § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

These terms are substantially identical to those in WIS. STAT. § 788.02, with only small differences that are immaterial to the issue here.

¶33 The Gish parties rely on an opinion that interpreted a predecessor version of WIS. STAT. § 788.02, noting that our supreme court rejected an argument that a circuit court erred in staying the court proceedings pending arbitration as early as before the defendant had filed a responsive pleading to the complaint. *See City of Madison v. Frank Lloyd Wright Found.*, 20 Wis. 2d 361, 393, 122 N.W.2d 409 (1963) (rejecting argument that circuit court's authority under a predecessor to § 788.02 was limited to staying only the trial of the action "and not all preliminary proceedings"). Based on *Frank Lloyd Wright Foundation*, the Gish parties argue that the reference to a stay "of the trial of the action" in § 788.02 does not give a circuit court authority to address pretrial matters when the court has determined that a dispute in a civil action is headed to arbitration. But the court in *Frank Lloyd Wright Foundation* did not state that circuit courts are prohibited from considering a temporary injunction motion merely because the court plans to enter a stay of the trial pending arbitration. *See Frank Lloyd Wright Found.*, 20 Wis. 2d at 394 (stating that predecessor to § 788.02 "*allowed* the [circuit] court to stay all further proceedings once it is determined that an issue in the action is referable to arbitration" (emphasis added)).

¶34 We do not understand the legislature, in enacting WIS. STAT. § 788.02, to have intended to deprive parties in all civil actions involving arbitrable disputes of the possibility of temporary injunctive relief under all circumstances. A federal court has made an analogous point. *See Bradley*, 756 F.2d at 1052 (Congress would not have "enacted a statute intended to have the sweeping effect of stripping the federal judiciary of its equitable powers in all arbitrable commercial disputes without undertaking a comprehensive discussion and evaluation of the statute's effect").

¶35 Having established that nothing in the Wisconsin Arbitration Act generally limits the power of a circuit court to issue a temporary injunction under WIS. STAT. § 813.02(1) in a civil action, we conclude that the power remains.

¶36 This brings us to the nature of that power. Circuit courts address four elements in deciding whether to issue a temporary injunction. *See Milwaukee Deputy Sheriffs' Ass'n*, 370 Wis. 2d 644, ¶20 ("A court may issue a temporary injunction when the moving party demonstrates four elements: (1) the movant is likely to suffer irreparable harm if a temporary injunction is not issued; (2) the movant has no other adequate remedy at law; (3) a temporary injunction is necessary to preserve the status quo; and (4) the movant has a reasonable probability of success on the merits."); *see also, e.g.*, *Performance Unlimited*, 52 F.3d 1373, 1380 (6th Cir. 1995) (noting that federal circuit courts affirming preliminary injunctions in disputes that must be arbitrated require the party seeking the relief to satisfy the criteria for obtaining an injunction).

¶37 We pause to observe that a circuit court considering a temporary injunction motion in a case headed to arbitration will naturally take into account the arbitration procedures and remedies that the parties have adopted through the exercise of their broad ability to reach arbitration agreements. *See Midwest Neurosciences*, 384 Wis. 2d 669, ¶¶40-41 (arbitration agreements are a matter of contract, and "[p]arties may contract broadly and agree to arbitrate, even the issue of arbitrability"). This is because arbitration procedures chosen by the parties in their agreement will naturally be part of the relevant facts and circumstances of the case. *See Joint Sch. Dist. No. 1, City of Wisconsin Rapids v. Wisconsin Rapids Educ. Ass'n*, 70 Wis. 2d 292, 309, 234 N.W.2d 289 (1975) ("As a general rule, … whether an injunction should be granted depends upon all the facts and circumstances of a particular case.").

16

¶38    The fact that circuit courts considering temporary injunction motions will take into account arbitration terms supports our conclusion that the pro-arbitration goals of the Wisconsin Arbitration Act are complemented, and not hindered, when courts have authority to issue temporary injunctions.  This is because a temporary injunction must be necessary to prevent "irreparable harm" and to "preserve the status quo."  *See Milwaukee Deputy Sheriffs' Ass'n*, 370 Wis. 2d 644, ¶20.  We are persuaded by the logic of federal case law explaining that a temporary injunction might be necessary to preserve a "meaningful" arbitration.  *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990).  That is, injunctive relief may be appropriate when necessary to avoid rendering arbitration a "'hollow formality,'" because otherwise one or more parties might "alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute."  *See id.* (quoting *Bradley*, 756 F.2d at 1053-54).  The power under WIS. STAT. § 813.02(1) to issue an order to preserve the status quo "during the litigation," and prevent the ultimate judgment from being "ineffectual," ensures that the ultimate remedy—whether it is rendered through a trial or an arbitration—does not lose meaning as a result of intervening events that a court can reasonably anticipate.  *See* § 813.02(1)(a).

¶39    Our conclusion that injunctive relief may be available in this context is consistent with the weight of persuasive federal authority.  The U.S. Supreme Court has not addressed whether a district court has authority to grant preliminary injunctive relief in a case that will be arbitrated consistently with the Federal Arbitration Act, 9 U.S.C. § 3.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum*, 469 U.S. 1127 (1985) (White, J., dissenting from denial of certiorari review on the issue whether § 3 bars a court-ordered preliminary injunction pending arbitration of a dispute).  But numerous federal appeals courts have.

17

None of these courts has ruled that the federal act prohibits preliminary injunctions in all such cases. Further, courts forming the vast majority have ruled that court-issued relief may be available, when necessary, to preserve the status quo and thereby avoid rendering the arbitration proceedings to come, in the words of the Fourth Circuit, a "hollow formality." *Bradley*, 756 F.3d at 1053.[7]

---

[7] Seven federal circuit courts have approved of court authority to issue preliminary injunctive relief preserving the status quo to allow a meaningful arbitration. *See Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 47-51 (1st Cir. 1986) ("a district court can grant injunctive relief in an arbitrable dispute pending arbitration"); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051-54 (2d Cir. 1990) (district court had jurisdiction to issue an injunction pending arbitration); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811-13 (3d Cir. 1989) ("a district court has the authority to grant injunctive relief in an arbitrable dispute"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1051-54 (4th Cir. 1985) (district court "has the discretion" in a case subject to arbitration "to grant a preliminary injunction to preserve the status quo pending the arbitration of the parties' dispute if the enjoined conduct would render that process a 'hollow formality'"); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1378-80 (6th Cir. 1995) (district court has subject matter jurisdiction "in a dispute subject to mandatory arbitration" "to grant preliminary injunctive relief"); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 351-52 (7th Cir. 1983) (district court's decision not to grant injunctive relief in a case requiring arbitration was erroneous); *Toyo Tire Holdings of Ams. Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 979-82 (9th Cir. 2010) ("a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process"). Ohio has the same rule. *State ex rel. CNG Fin. Corp. v. Nadel*, 2006-Ohio-5344, ¶¶15-17, 855 N.E.2d 473 (trial court had authority to consider motion for preliminary injunction while motion to stay for arbitration was pending; relying in part on "'the great weight of [federal] circuit court authority'" (quoted source omitted)).

At least one federal circuit court takes a more restrictive approach, approving judicially issued preliminary injunctions only when the arbitration agreement explicitly authorizes such relief. *See Manion v. Nagin*, 255 F.3d 535, 538-39 (8th Cir. 2001) (permitting injunctive relief in arbitrable cases only if the parties' agreement has "'qualifying contractual language' which permits it" (quoted source omitted)). Two other federal circuit courts have permitted judicial preliminary injunctions when the arbitration agreements in those cases expressly contemplated the availability of injunctive relief, but without addressing whether such express language was required. *See RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 229-30 (5th Cir. 1988) (ruling preliminary injunction was available under express terms in the agreement "contemplate[ing] that the status quo is to continue pending arbitration" without addressing whether such relief could be granted otherwise); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 727-28 (10th Cir. 1988) (noting that the contract at issue "entitled" a party to seek injunctive relief "protecting the status quo until the merits" of the dispute can be resolved in arbitration).

¶40    The Gish parties assert that interpreting WIS. STAT. § 788.02 to permit temporary injunctive relief would produce a "nonsensical" rule that "moots the entire concept of stays and arbitration." But, setting aside their argument based on Wisconsin case law that we have explained is limited to the topic of arbitrability, the Gish parties merely suggest a concern about undue influence that a temporary injunction might have on what arbitrators end up doing or not doing. That is, the Gish parties suggest that a circuit court's assessment of the likelihood of future success on the merits of the underlying action—even when the assessment is for the limited purpose of considering temporary relief—might unduly influence the arbitration process.

¶41    The Gish parties also might mean to suggest a related point about timing. The point would be that allowing courts to consider temporary injunction motions risks unreasonably prolonging the court's determination of whether the case is headed to arbitration, undercutting the goal of promoting arbitration over litigation in the courts as a speedier and more efficient means of resolving disputes. *See Marlowe*, 346 Wis. 2d 450, ¶31 ("arbitration must remain a speedy, cost-efficient alternative to conventional litigation, not an equally slow, cumbersome process that simply happens to take place in front of an arbitration panel rather than a circuit court judge" (emphasis omitted)).

¶42    These arguments based on concerns about undue influence and timing might prevail in some jurisdictions.[8] But if the Gish parties intend to evoke

---

[8] *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir. 1984) ("judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator," in the absence of language in arbitration agreement providing for such relief); *Feldman/Matz Ints., L.L.P. v. Settlement Cap. Corp.*, 140 S.W.3d 879, 885-87 (Tex. App.-Houston 2004) (trial court lacked authority to grant a temporary injunction pending arbitration

(continued)

these positions, we reject them. As we now explain, this is because they fail to account for the limited nature of temporary injunctive relief and for the ability of circuit courts to act with sufficient speed.

¶43 Injunctive relief issued pursuant to WIS. STAT. § 813.02 is an attempt to temporarily preserve the status quo in a dispute. It is not a final resolution of the merits. *See, e.g.*, *School Dist. of Slinger*, 210 Wis. 2d at 373 ("The purpose of 'a temporary injunction is to maintain the status quo, not to change the position of the parties or compel the doing of acts which constitute all or part of the ultimate relief sought.'" (quoting *Codept, Inc. v. More-Way N. Corp.*, 23 Wis. 2d 165, 173, 127 N.W.2d 29 (1964) (emphasis omitted))).[9] Because the relief at issue is not final, a Wisconsin appellate court reviewing a circuit court's temporary injunction decision does not resolve the underlying merits, even though the likelihood of ultimate success on the merits is one element to consider. *See, e.g.*, *id.* at 371 ("The merits of the case are not before this court in the instant appeal; the only question is whether the circuit court erroneously exercised its discretion" in granting an injunction.).

---

because the arbitration agreement did not contain express terms demonstrating that the parties contemplated court intervention to maintain the status quo; further stating that injunctive relief "would require the court to consider the merits of the underlying dispute, which would interfere with the arbitrator's independent determination of the issues and frustrate the strong federal policy in favor of speedy implementation of arbitration without delay and obstruction in the courts."), *disagreed with by* *Frontera Generation Ltd. P'ship v. Mission Pipeline Co.*, 400 S.W.3d 102, 108-110 (Tex. App., Corpus Christi-Edinburg 2012) (noting that showing of "probable right of recovery" needed for a temporary injunction under Texas law was "not a ruling on the merits" and did "not interfere with the ultimate discretion that will be vested in the arbitration proceeding").

[9] Preliminary injunctive relief in the federal courts has the same goal. *See* *Performance Unlimited*, 52 F.3d at 1378 ("'the object and purpose of a preliminary injunction is to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined'" (quoted source and alteration marks omitted)).

¶44     Further, arbitrators have the power to review the evidence and apply the law to reach an award according to their own judgment, under the arbitration rules adopted by the parties.  *See **McKenzie v. Warmka***, 81 Wis. 2d 591, 597, 260 N.W.2d 752 (1978) ("arbitrators ordinarily are expected to determine questions of law as well as fact").  In recognition of the broad authority of arbitrators, after arbitrations are over, the role of a reviewing court is highly deferential and limited to well-defined topics.  *See **Loren Imhoff Homebuilder, Inc. v. Taylor***, 2022 WI App 14, ¶40, 401 Wis. 2d 510, 973 N.W.2d 836 (arbitration awards are presumed valid; "'mere errors of fact or law'" insufficient to vacate award (quoted source omitted)); *see also **Bradley***, 756 F.2d at 1054 & n.6 (rejecting argument "that the district court's preliminary injunction will prejudice the arbitrator's subsequent decision on the merits" because "arbitrators are sworn to render a decision based solely upon the evidence presented to them" under pertinent arbitration rules).

¶45     The result is that, if a circuit court in a case that requires arbitration grants a temporary injunction that is appropriate in scope in ways that we have already discussed, this should not prejudice or unduly influence the parties' chosen arbitrator or arbitration panel in rendering an award.  The court's goal in issuing a temporary injunction would be to preserve the status quo only in such ways that are necessary—including for only as long as is necessary—to allow the parties to fulfill their agreement to arbitrate the merits using their chosen procedures.[10]

---

[10] *See **Performance Unlimited***, 52 F.3d at 1380 (issuing preliminary injunctions in arbitrable disputes can reinforce policy of Federal Arbitration Act to enforce arbitration agreements entered into by the parties); ***Dutton***, 844 F.2d at 728 (explaining that a judicially ordered injunctive remedy should not "deprive an arbitration panel of the full span of its broad authority over the parties and over all arbitrable issues"); ***Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano***, 999 F.2d 211, 215 (7th Cir. 1993) (describing as a "reasonable limitation" on the scope of a temporary restraining order issued by a district court that the order would expire

(continued)

21

¶46    Viewed another way, the concern that a temporary injunction could interfere with an arbitration process does not tell us how to interpret WIS. STAT. § 788.02.  Instead, that concern merely helps a circuit court properly exercise its discretion regarding whether to issue a temporary injunction at all, and if so, decide on its proper scope.  For example, on the proper scope point, an injunction should avoid changing the positions of the parties too broadly or irrevocably, or extending too far into the future.[11]

¶47    For similar reasons, our conclusion that WIS. STAT. § 788.02 does not prohibit courts from addressing temporary injunction motions is not altered by the fact that a circuit court may need time to resolve a temporary injunction motion, potentially contributing to pre-arbitration delay.  The text of § 788.02 does not direct that a court must issue a stay "immediately" or "promptly" after receiving a stay motion.

¶48    We acknowledge that a court's pre-arbitration involvement might become prolonged under circumstances that we can imagine.  For example, a court might decide that full briefing and the presentation of evidence is necessary for the court to decide the temporary injunction issue.  And, in cases like this one, in which eventual arbitration is a foregone conclusion, a significant share of all pre-

---

when "'the arbitration panel is able to address whether the [order] should remain in effect'" (quoted source omitted)).

[11] *See* **Dutton**, 844 F.2d at 728 ("an injunctive remedy that would deprive an arbitration panel" of the authority given to it by the parties under their agreement would exceed "the court's power to preserve the prearbitration status quo"); **Performance Unlimited**, 52 F.3d at 1386 ("'Once assembled, an arbitration panel can enter whatever temporary injunctive relief it deems necessary to maintain the status quo,'" and so "'courts are ill-advised to extend the injunction once arbitration proceeds.'" (quoted sources omitted)).

arbitration delay might be attributable to the temporary injunction motion and its resolution.

¶49     But, mitigating the risk of meaningful delay, pretrial matters "do not involve the same degree of time and expenses that is required by a trial," and "arbitration remains a viable alternative to litigation" provided "a decision on a substantive issue" is not made by the court.  *See **J.J. Andrews, Inc. v. Midland***, 164 Wis. 2d 215, 224, 474 N.W.2d 756 (Ct. App. 1991).  Further, courts are mindful that the purpose of arbitration is to "obtain a speedy, inexpensive and final resolution of disputes, and thereby avoid the expense and delay of a protracted court battle."  *See **id.*** at 223-24.

¶50     On a related note, if the arbitration procedures selected by the parties provide procedures for quick relief, then a circuit court might take that into account in weighing the need for a temporary injunction.  A court might conclude that pertinent terms of the arbitration agreement provide sufficient means to avoid irreparable harm in advance of an arbitration award, so that a court-ordered temporary injunction might not be, in the words of our supreme court, "necessary to preserve the status quo."  *See **Milwaukee Deputy Sheriffs' Ass'n***, 370 Wis. 2d 644, ¶20.  In another case, however, a court might conclude that its equitable power to issue a temporary injunction should be used to fill one or more gaps under an arbitration agreement that may expose a party to irreparable harms.[12]

---

[12] Persuasive authority provides illustrations of these dynamics.  In a California case, the arbitration agreement allowed the parties to seek the appointment of an "emergency arbitrator" from whom a party could directly obtain temporary injunctive relief.  *See **Kirk v. Ratner***, 290 Cal. Rptr. 3d 207, 211 (Cal. Ct. App. 2022) (noting that party seeking arbitration sought and obtained preliminary injunctive relief from "an emergency arbitrator," who was appointed by an arbitration service under the rules agreed to by the parties).  This emergency relief would be in place before arbitrators are able to act.  *See **id.***  A federal appellate court observed that if a district

(continued)

¶51 Summarizing, the circuit court's role in considering a temporary injunction in a case that requires arbitration is naturally limited in ways that are similar to the court's limited roles in, on the front of a dispute, determining whether arbitration is required, and, on the back end, addressing permissible issues regarding the arbitration award, such as entering a consistent judgment. *See L.G.*, 387 Wis. 2d 724, ¶17 (court's role in deciding arbitrability is "determining whether there is an enforceable arbitration agreement, and ensuring the parties abide by its terms"); *Green Bay Pro. Police Ass'n v. City of Green Bay*, 2023 WI 33, ¶9, 407 Wis. 2d 11, 988 N.W.2d 664 (court's review of an arbitration award "is generally limited to ensuring that the parties received the arbitration process for which they bargained"). The court should consider whether an injunction is necessary, beyond or in addition to any relief that is available under the arbitration agreement, to ensure that the parties are able to arbitrate their dispute in the manner they agreed to.

*The Arbitration Agreement*

¶52 We turn to the operating agreement. The Gish parties may intend to argue that it prevents the circuit court from considering the temporary injunction motion. The argument would be that, even if WIS. STAT. § 788.02 could in some cases permit court-ordered temporary injunctions pending arbitration, here the specific agreement, including its incorporated arbitration rules, forbids it.

---

court determines that the parties are positioned to promptly obtain temporary relief through an arbitration procedure, the district court could reasonably determine that a court-ordered injunction is not necessary to preserve the status quo pending arbitration. *See Salvano*, 999 F.2d at 216 (extension of injunctive relief in the form of temporary restraining order "was improvident" because arbitration panel was "in place" to decide issues including the need for "preliminary injunctive relief").

¶53     We do not need to decide if an arbitration agreement *could* prevent a circuit court from issuing a temporary injunction.  We assume without deciding that a flat prohibition on all forms of temporary relief could be enforced, no matter how compelling the arguments for a temporary injunction might be.  We conclude that the arbitration rules adopted by the parties here do not include such a prohibition.  To the contrary, they contemplate the possibility of court-ordered temporary injunctive relief.

¶54     Arbitration agreements are contracts.  ***Midwest Neurosciences***, 384 Wis. 2d 669, ¶¶38, 40.  This court interprets contracts under a de novo standard of review.  ***Id.***, ¶38.

¶55     To recap, the underlying dispute here concerns proper ownership and control over a limited liability company, and the pertinent arbitration agreement is contained in the company's operating agreement.  Specifically, in a section entitled "Alternative Dispute Resolution," the operating agreement states that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach of it, shall be finally settled in accordance with the Commercial Arbitration Rules of the American Arbitration Association."  We refer to these as "the arbitration rules."  There is no dispute that the parties, by referring to the arbitration rules as they do, established that they would use the arbitration rules in the event of arbitration.  *See* COMMERCIAL ARB. RULES, *American Arb. Assoc.*, R-1(a) (Sept. 1, 2022).[13]  The agreement further states that the parties intend to use

---

[13] No version of the arbitration rules was made part of the record in the circuit court. But, in briefing on appeal, the Robinson and Gish parties jointly request that this court take judicial notice of the publicly available version of the arbitration rules that went into effect on September 1, 2022, and to treat this version as authoritative in establishing the rules incorporated by the parties into the operating agreement. *See* COMMERCIAL ARB. RULES, *American Arb.*

(continued)

"Expedited Procedures" that are set forth in the arbitration rules. *See id.*, R-1(d) (explaining that parties "may, by agreement, apply the Expedited Procedures" even when the procedures would not apply by default). Neither set of parties cites to other terms in the operating agreement that could be relevant to determining the scope of the parties' agreement to arbitrate.[14]

¶56 The text of the provision of the operating agreement, standing alone and without the incorporated arbitration rules, does not suggest that the parties foreclosed the pre-arbitration remedy of court-ordered temporary relief. This provision establishes only that the parties would use arbitration to "finally settle[]" pertinent disputes in accordance with the incorporated arbitration rules.

¶57 This leaves the arbitration rules, which for reasons we now explain affirmatively demonstrate that the parties contemplated that a party could seek temporary injunctive relief from a court.

¶58 Rule 38 of the arbitration rules most directly addresses the topic of temporary injunctive relief. It strongly supports the conclusion that the parties here entered into an agreement which contemplates that a circuit court could consider injunctive relief. Rule 38 explicitly allows an arbitrator, once empaneled, to order temporary injunctive relief. *See id.*, R-38(a) ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief

---

*Assoc.* (Sept. 1, 2022) (found at https://www.adr.org/rules-forms-and-fees/commercial (last accessed Apr. 24, 2026)).

[14] We observe that the arbitration provision of the operating agreement states that "[t]he award of the arbitrators[] shall be the sole and exclusive remedy between the parties regarding any claims, counterclaims, issues or accountings presented or pled to the arbitrators." We interpret this to address only those issues and claims that are in fact "presented or pled to the arbitrators," and neither party suggests that these terms are relevant to the issue we resolve.

and measures for the protection or conservation of property and disposition of perishable goods."). However, Rule 38 further states that "[a] request for interim measures addressed by a party to a judicial authority *shall not be deemed incompatible with the agreement to arbitrate* or a waiver of the right to arbitrate." *See id.*, R-38(c) (emphasis added). This unambiguously contemplates that the parties may seek "interim measures" from a court, and Rule 38(a) establishes that "interim measures" includes "injunctive relief." Persuasive authority is in accord. *See O'Rourke v. Lunde*, 2014 VT 88, ¶28, 104 A.3d 92 (interpreting predecessor to ARB. RULE R-38(a) and (c) as permitting a party to arbitration agreement to seek interim relief from a court); *Holiday Isle, LLC v. Adkins*, 12 So.3d 1173, 1176-77 (Ala. 2008) (concluding that predecessor to R-38(a) and (c) gave trial court "jurisdiction to enter a preliminary injunction … to preserve the status quo"). Accordingly, we conclude that the arbitration rules adopted here permit the circuit court to issue a temporary injunction under appropriate circumstances.[15]

¶59 Moreover, nothing in the parties' choice of the expedited procedures appears to limit the broad terms of Rule 38(c). *See* ARB. RULES, E-1 through E-10 (outlining procedures for arbitration including, for example, setting "date, time, place, and method of hearing" to address the underlying dispute, and setting

---

[15] The parties do not discuss Rule 38, only Rule 39. We need not address Rule 39 in depth, because it does not apply here. This is due to the fact that the parties elected to pursue expedited procedures. *See* ARB. RULES, R-1(d) (discussing ability of parties to adopt expedited procedures), R-39(a) ("This Rule shall not apply to cases administered pursuant to the Expedited Procedures."). We note for context that, when Rule 39 applies, it describes procedures for addressing requests for "emergency relief prior to the constitution of the [arbitration] panel," provided by an "emergency arbitrator" appointed by the American Arbitration Association. *See id.*, R-39(b)[*]-(f). Like Rule 38(c), Rule 39(h) states that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Rule" or with the parties' agreement to arbitrate, nor is such a request "a waiver of the right to arbitrate." *See id.*, R-39(h).

default deadline for issuance of award as "not later than 14 calendar days from the date of the closing of the hearing").

*Relief in This Appeal*

¶60 Having concluded that the circuit court erroneously exercised its discretion in declining to consider whether the Robinson parties are entitled to temporary injunctive relief, we now explain why we remand to the circuit court for consideration of the temporary injunction motion. We express no views about whether an injunction would have been appropriate when first requested, nor about whether one would be appropriate following remand.

¶61 The Robinson parties contend that, under the criteria for granting temporary injunctive relief, the circuit court should have issued the requested injunction, and that this court should remand with directions that the circuit court issue it. The Gish parties dispute that the Robinson parties' temporary injunction motion should have been granted on the merits. They also argue that, if this court determines that the circuit court erred, the appropriate remedy would be to remand for the circuit court to exercise its discretion. We agree with the Gish parties that it is for the circuit court, and not this court, to address in the first instance whether temporary injunctive relief should be granted.

¶62 We reject the Robinson parties' argument because they provide no authority for the proposition that it would be appropriate for this court to direct the circuit court on remand to grant a temporary injunction. *See **Doe 1 v. Madison Metro. Sch. Dist.***, 2022 WI 65, ¶¶37-40, 403 Wis. 2d 369, 976 N.W.2d 584 (rejecting request for temporary injunctive relief from our supreme court when "[s]uch a motion remains pending in the circuit," in part because movants provided no authority to support the proposition that the supreme court "can or

should grant injunctive relief under [WIS. STAT. §] 813.02 in this procedural context"). In reviewing a circuit court decision on a temporary injunction motion, "[t]he test is not whether the appellate court would grant the injunction but whether there was an erroneous exercise of discretion by the circuit court." *School Dist. of Slinger*, 210 Wis. 2d at 370.

¶63 The Robinson parties assert that "the operative facts are undisputed." But numerous aspects of their claims and the relevant facts, including the potential for irreparable harm, would be for the circuit court to decide in the first instance. This might include, for example, weighing relevant considerations arising from the passage of time between the filing of the temporary injunction motion and post-remand circuit court proceedings. When a circuit court "fails to exercise a discretionary power with which it is vested on the erroneous ground that the power does not exist," the usual approach for this court is to remand. *Werner*, 331 Wis. 2d 511, ¶82. Here, the court did not explain that it would have exercised its discretion to grant or deny a temporary injunction, assuming that the court had the power that it thought it lacked. *See id.* (remand unnecessary when the circuit court "'has stated in its memorandum decision that it would exercise its discretion to grant the relief requested if it possessed the power to do so'" (quoted source omitted)).

¶64 To clarify a procedural point, we remand for further circuit court action to address the temporary injunction motion despite the fact that the court has entered a stay of the trial and the stay remains in place. Keeping the stay in place is proper under WIS. STAT. § 788.02, because there is no dispute that the underlying claims must be arbitrated. It is appropriate for the circuit court to now address the temporary injunction motion, despite the stay order, because the court erred in declining to address it. The parties do not indicate that they have initiated

any part of the arbitration process and, more broadly, no party suggests that this appeal is moot. Thus, so far as the parties have made us aware, if the Robinson parties continue to seek temporary injunctive relief following remand, the court will be free to weigh whether an injunction is appropriate to cover the period before pertinent arbitration activity.

¶65 Our conclusion that a remand is appropriate, despite the stay, is consistent with our supreme court's recognition that the Wisconsin Arbitration Act permits a party to obtain at least some kinds of relief in the circuit court, even after arbitration proceedings are ongoing, so long as "unusual circumstances" justify it. *See Marlowe*, 346 Wis. 2d 450, ¶20. In the course of discussing a discovery dispute in a case being arbitrated, the court in *Marlowe* noted that the general prohibition against circuit courts granting relief when arbitration proceedings are ongoing is subject to an "occasional exception to accommodate especially urgent or potentially irreparably prejudicial matters that demand the immediate attention of the courts." *Id.*; *see also Borst v. Allstate Ins. Co.*, 2006 WI 70, ¶35, 291 Wis. 2d 361, 717 N.W.2d 42 ("pre-arbitration challenges to arbitrators selected by the parties are permissible[,] … a party may seek removal of a challenged arbitrator under the general equity powers of the circuit court"). Yet, beyond citing the general proposition from *Marlowe* and the comment in *Borst*, we do not aim to provide guidance on what circumstances might justify a circuit court in another case taking up a temporary injunction motion after the court has issued a stay of the trial of the underlying action for arbitration. The parties in this appeal do not shed light on this timing-related topic.

## II. Motion for a Declaration

¶66    The party purporting to be Herbal Aspect filed a motion in the circuit court requesting a "declaration" that a law firm professing to represent the company may act as its counsel in this action.  On appeal, the Robinson parties renew the argument that the court could issue such a declaration as an exercise of the court's "inherent authority to resolve disputes regarding representation of parties who appear before the [c]ourt."  We review this issue de novo.  *See State v. Schwind*, 2019 WI 48, ¶11, 386 Wis. 2d 526, 926 N.W.2d 742.  We reject this argument because it is undeveloped in multiple respects, including the absence of pertinent legal authority.

¶67    To start, it is a major weakness of the Robinson parties' argument that they use only the most general terms in asserting what it is that they want the circuit court to declare.  The motion stated only that it sought a declaration that the law firm "may appear as counsel for Herbal Aspect LLC in the … matter."  This fails to describe in clear terms the scope of the relief sought and why it was necessary for the court to grant that relief in order to properly carry out its role in the case.  *See id.*, ¶15 (Wisconsin courts must be "careful to invoke inherent authority if, but only if" doing so is "necessary to 'maintain the courts' dignity, transact their business, and accomplish the purposes of their existence'" (quoted source and alteration marks omitted)).  At least as far as the Robinson parties argued the point in the circuit court, it is unclear whether the declaration would address the company's representation only in the circuit court, only for purposes

of arbitration, or both.[16]  This lack of fundamental clarity would be a sufficient reason to affirm the circuit court on this issue.

¶68    Further, the Robinson parties primarily, but inadequately, rest their argument for the declaration on their factual allegations regarding the merits of their underlying claims against the Gish parties.  This is inadequate for at least the reason that they do not explain how what they assert about the merits of the underlying claims can support their request for some specific declaration.  It is not enough to identify an area of dispute; the Robinson parties have consistently failed to explain why they are entitled to a specific declaration.

¶69    Part of the Robinson parties' failure on this issue is that they offer little legal authority in support, and what they offer is not on point.  This contrasts sharply with their temporary injunction motion; whatever its strengths or weaknesses, the injunction motion seeks to evoke the well-established power of a circuit court in a civil action to issue a temporary injunction.  Although they use the term "declaration," they do not connect their motion to the terms of WIS. STAT. § 806.04 (addressing declaratory judgments), or for that matter to any other statute.  Instead, they cite a single opinion as legal authority, ***Koschkee v. Evers***, 2018 WI 82, 382 Wis. 2d 666, 913 N.W.2d 878, and we now explain why that opinion does not apply here.

_____

[16] In their appellate brief in opposition to a motion for costs and fees filed in this court by the Gish parties, *see infra* note 17, the Robinson parties assert that their representation-related motion was intended to address only continued litigation in the circuit court.  But the Robinson parties do not direct us to record evidence that they took this position in the circuit court, as would be necessary to preserve the issue for appeal.  Further, we see no reason to excuse their failure to include this argument in the appellate briefing on the merits, including in their brief-in-chief, which was submitted before the Gish parties filed their motion for costs and fees.  *See* WIS. STAT. RULE 809.19(1)(e), (8)(c)1. (requiring appellants to include legal arguments in their brief in chief and establishing length limitations for briefs).

¶70    *Koschkee* was an original action in our supreme court, in which the court determined that its "superintending authority over [Wisconsin's] courts and over the practice of law gives [the supreme court] the power to resolve disputes regarding representation." *Id.*, ¶¶3, 12; *see also Schwind*, 386 Wis. 2d 526, ¶18 (citing *Koschkee* for proposition that one area of "inherent authority" possessed by Wisconsin courts is "regulating the bench and bar," which includes the authority to "resolve disputes regarding representation of a client"). The supreme court in *Koschkee* used this power to determine that the department of public instruction (DPI) was entitled to counsel of its choice and that it was not required to be represented by the department of justice (DOJ). *See Koschkee*, 382 Wis. 2d 666, ¶¶3-6, 13. This was because the action concerned the constitutional scope of the DPI superintendent's power, and DOJ disagreed with DPI on that issue. *See id.*, ¶14. The court explained that it was obligated to exercise its superintending authority in this original action to avoid sticking a party with legal counsel who the party did not want and who could take positions with which the party did not agree. *See id.*, ¶13.

¶71    Assuming without deciding that the circuit court here has the authority to exercise the implied power exercised by our supreme court in *Koschkee*—which may be no small assumption—that opinion is wholly inapplicable to the dispute over counsel in this case. In *Koschkee*, the dispute over representation involved whether a party would be able to retain counsel of the party's choosing to allow the party to advance its own legal position. *See id.* Here, the party purporting to be Herbal Aspect has been able to retain counsel of its choosing, and there is no indication that the party purporting to be Herbal Aspect has not been able to pursue its own legal positions through that counsel.

To the extent that the Robinson parties intend to extend the logic of *Koschkee*, they do not develop the point based on the reasoning in that opinion.

¶72    Separately, the Robinson parties observe that the Gish parties made multiple references in circuit court filings to the effect that Herbal Aspect was not properly authorized to join this action or to retain the law firm as legal counsel. The Robinson parties apparently mean to argue that they are now entitled to a declaration on these topics to prevent the court from making a ruling consistent with the Robinson parties' positions. But the mere fact that the Gish parties expressed positions on this topic does not advance their argument that the circuit court should now issue a declaration.

¶73    In sum on this issue, we are left with no ground to reverse the circuit court's decision not to enter a declaration. *See State v. Baudhuin*, 141 Wis. 2d 642, 648, 416 N.W.2d 60 (1987) (appellate court may affirm circuit court decision under different reasoning than is used by circuit court).[17]

## CONCLUSION

¶74    For all of these reasons, we affirm the portion of the circuit court's order denying the motion for a declaration, and we reverse the portion of the court's order rejecting the motion for a temporary injunction. We remand for the circuit court to consider the temporary injunction motion under the applicable standards.

---

[17] The Gish parties have moved this court for costs, fees, and attorney fees, and summary dismissal of this appeal, based on what they contend is the frivolousness of the appeal. *See* WIS. STAT. RULE 809.25(3). But we conclude that some of the Robinson parties' appellate arguments are correct. Therefore, we deny the Gish parties' motion. *See* RULE 809.25(3)(c) (defining the needed findings to award costs and fees based on a frivolous appeal).

*By the Court*.—Order affirmed in part; reversed in part and cause remanded.

Recommended for publication in the official reports.